IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NATHANIAL TUFF,

                    Plaintiff,

                                              Civ. Action No.
          v.                                  6:12-CV-550 (GTS/DEP)


MARISSA MONTANA GUZMAN and
ONEIDA COUNTY CHILD
PROTECTIVE SERVICES,

                    Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

NATHANIAL TUFF
Plaintiff, *pro se*
1617 Miller Street
Utica, New York 13501

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION AND ORDER

I.      BACKGROUND

        Plaintiff Nathanial Tuff, who is proceeding *pro se* and seeks leave to

proceed in this matter *in forma pauperis* ("IFP"), has commenced this

1

action alleging civil rights violations under 42 U.S.C. § 1983 and 18 U.S.C. § 242.[1]  *See* Dkt. Nos. 1, 2.  It appears from plaintiff's rather cursory complaint that this lawsuit arises out of an Oneida County Child Protective Services ("CPS") investigation conducted by defendant Marissa Montana Guzman, a CPS caseworker.  *See generally* Complaint (Dkt. No. 1). Plaintiff alleges that defendant Guzman detained his three children on February 13, 2012, without informing them of their civil rights and neglected to include important information in her written reports regarding the matter.  *See id.* at § 4.  Plaintiff claims that his rights, as well as those of his sons, were violated, he seeks to recover $5,000 in damages on behalf of each of his sons, and to have defendant Guzman removed from his case.  *See id.* at § 5.

　　　　Having afforded plaintiff the deference to which he is entitled as a *pro*

---

[1]      Plaintiff is familiar to the court, having filed a series of five civil rights actions in this district in which he sought leave to proceed IFP in 2009, including: *Tuff v. Dwyer*, No. 6:09-CV-0182 (filed Feb. 17, 2009) (dismissed on March 10, 2009 pursuant to 28 U.S.C. § 1915(e)(2)(B) based upon plaintiff's failure to state a cause of action); *Tuff v. Lt. Liddy*, No. 6:09–CV–0183 (filed Feb. 17, 2009) (dismissed on May 21, 2009 pursuant to 28 U.S. C. § 1915(e)(2)(B) based upon plaintiff's failure to state a cause of action); *Tuff v. Oneida Cnty. District Attorney's Office*, No. 6:09-CV-0184 (filed Feb. 17, 2009) (dismissed on Mar. 11, 2009 pursuant to 28 U.S. C. § 1915(e)(2)(B) based upon plaintiff's failure to state a cause of action); *Tuff v. Oneida Cnty. Jail*, No. 6:09-CV-0185 (filed Feb. 17, 2009) (summary judgment granted in favor of defendants on Feb. 16, 2010); and *Tuff v. Rome Police Dep't, et al.*, No. 6:09-CV-0262 (filed Mar. 4, 2009) (dismissed on Oct. 27, 2009 as barred by the statute of limitations).

*se* litigant and liberally construed plaintiff's pleading, I have nonetheless concluded that although plaintiff's IFP application will be granted, his complaint should be dismissed for lack of standing as to certain claims, failure to state a cause of action, and as frivolous, with leave to replead.

II.   DISCUSSION

   A.   *In Forma Pauperis* Application

As to plaintiff's *in forma pauperis* request, after a careful review of plaintiff's that application, the court finds that plaintiff qualifies for IFP status.  Plaintiff's request for permission to proceed *in forma pauperis* in this action will therefore be granted.

   B.   Standard of Review

Since the court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the court must consider the sufficiency of the allegations set forth in his pleading in light of 28 U.S.C. § 1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28

3

U.S.C. § 1915(e)(2)(B).  Thus, the court has a gatekeeping responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis*. *See id.*

In deciding whether a complaint states a colorable claim a court must extend a certain measure of deference towards *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (1983). There is, nonetheless, an obligation on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district court has power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an

arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'"  *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[2]

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]"  Fed.R.Civ.P. 8(a)(2).  The purpose of Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.'"  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162

---

[2]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497,

498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated

"enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974

(2007).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (citation omitted).  Although the court should

construe the factual allegations in the light most favorable to the plaintiff,

"the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.

Ct.1955).  Thus, "where the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has

alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at

1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

C.    <u>Analysis of Plaintiff's Claims</u>

6

Upon careful review of plaintiff's claims in light of the standards set forth above, for the reasons discussed below, I recommend their dismissal.

       1.   <u>Section 1983 Generally</u>

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S. Ct. 2510, 2516 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, J.) ("§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  In order to state a claim under section 1983, a plaintiff must allege that (1) the challenged conduct was attributable, at least in part, to a person or entity acting under color of state law, and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (quoting *West v. Atkins*, 487 U.S. 42,

7

48, 108 S. Ct. 2250 (1988)).

Plaintiff's section 1983 cause of action appears to center upon the actions of both defendant CPS and defendant Guzman.

### 2.   Defendant CPS

Plaintiff's complaint asserts claims under section 1983, 18 U.S.C. § 242 and negligence against both defendant Guzman and the CPS. Plaintiff's claims against the municipal entity, however, cannot stand. "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)(citations omitted).  I therefore recommend dismissal of plaintiff's claims against the Oneida County Department of Child Protective Services on this basis.

### 3.   Defendant Guzman

Turning to plaintiff's claims against defendant Guzman, it appears that he lacks standing to pursue those claims asserted on behalf of his sons.  "In every federal case, the party bringing the suit must establish

8

standing to prosecute the action."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S. Ct. 2301, 2308 (2004).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197(1975).  In order to establish standing for purposes of the constitutional "case or controversy" requirement, a plaintiff "must show that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S. Ct. 1601, 1607 (1979), and that the injury "is likely to be redressed by a favorable decision."[3]  *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S. Ct. 1917, 1924 (1976).

When liberally construing plaintiff's very sparse complaint, which is

---

[3]        Additionally, a party appearing as a litigant in a federal court must pursue claims either personally, or through counsel.  28 U.S.C. § 1654; *see Berrios v. New York City Housing Authority*, 564 F.3d 130, 133 (2d Cir. 2009).  While under section 1654 a party is permitted to appear *pro se*, that authority is limited to a party prosecuting or defending against claims in his or her own right and "does not permit 'unlicensed . . . [persons] to represent anyone else other than themselves.'" *Id.* at 133 (citing and quoting *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)); *see also Spickerman v. Carr*, No. 04-CV-6226P, 2004 WL 1529219, at *1 (W.D.N.Y. Jul. 7, 2004) ("To the extent that [the plaintiff] also has brought this claim on behalf of the minor children, however, he may not act as the children's representative in this action. He is not an attorney admitted to practice before this Court and therefore may not proceed on behalf of the minor children.") (citing cases).

lacking in both factual detail as well as the constitutional basis for plaintiff's section 1983 claim, it appears that he may be attempting to assert a violation of the Fourth Amendment to the United States Constitution with respect to defendant Guzman's questioning of his sons.  Fourth Amendment rights are personal, however, and plaintiff cannot assert a claim on behalf of the children who were the subject of the investigation. *Tenenbaum v. Williams*, 193 F.3d 581, 602 n.13 (2d Cir. 1999); *Ward v. Murphy*, F. Supp. 2d 83, 94 n.8 (D.Conn. 2004) (citing *Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961(1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted")).  It is therefore clear that plaintiff lacks standing to pursue any civil rights claims on behalf of his sons, and these claims should therefore be dismissed.

### 4.    18 U.S.C. § 242

While plaintiff characterizes his complaint as seeking relief for a claimed deprivation of civil rights, included within his pleading is a purported cause of action for violation of 18 U.S.C. § 242, which gives rise to criminal penalties for certain civil rights offenses.[4]  It is well-established

---

[4]    Section 242 provides that

that crimes are prosecuted by the government, not by private parties.  *See*

*Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87

(2d Cir. 1972).  Indeed, "it is axiomatic that a private citizen cannot bring a

criminal complaint."  *Brown v. Seniuk*, No. 01 CV 1248, 2002 WL

32096576, *1 (E.D.N.Y. Mar. 25, 2002) (citing *Linda R.S. v. Richard D.*,

410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable

interest in the prosecution or nonprosecution of another")).  As a result,

that portion of plaintiff's complaint alleging defendants' violation of this

criminal statute should also be dismissed for lack of standing.

### 5.    Substantive Due Process

---

[w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnaping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

Affording Tuff special lenience, to which he is entitled as a *pro se* plaintiff, his complaint may also be broadly interpreted to allege a claim on his own behalf insofar as his second cause of action alleges "violation of my and my sons [sic] civil rights.  The right to pursue happiness. . .."  The court construes this cause of action as a substantive due process claim for violation to his right of intimate association with his sons.  The Supreme Court has stated such a right is constitutionally protected "as a fundamental element of personal liberty" arising out of substantive due process.  *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 3249 (1984); *see also Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir.1999) ("'parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection'" (alteration in original)).  As the Second Circuit has recognized, "the Constitution in at least some circumstances protects familial relationships from unwarranted government interference."  *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (citing *Roberts*, 468 U.S. at 617-18, 104 S. Ct. at 3249).  "In order to prevail on such a claim  a plaintiff 'must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it

12

accompanied by full procedural protection.'"   *Cox v. Warwick Cent. Sch. Dist.*, No. 7:07-CV-10682, 2010 WL 6501655, at * 11 (S.D.N.Y. Aug. 16, 2010) (quoting *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir.2003) (in turn quoting *Tenenbaum*, 193 F.3d at 600) (internal quotations omitted) (alteration in original); *see also Oglesby v. Eikszta*, No. 1:07-CV-00051, 2007 WL 1879723, at *12 (N.D.N.Y. Jun. 28, 2007) (McCurn, S.J.) (citing *Anthony* and *Tenenbaum*).

Even though plaintiff may have a constitutionally protected interest in his relationship with his sons, the complaint is barren of any facts suggesting that he has a plausible claim for interference with that right. Indeed, the claim is made in a single sentence, and there are no facts disclosing the manner by which plaintiff claims defendant Guzman interfered with his relationship with his sons, and certainly sets forth no facts  indicating that defendant's alleged conduct rises to the level of extreme and outrageous and/or conscience shocking.  I have therefore concluded that plaintiff has failed to state a plausible claim for violation of his rights with respect to his relationship with his sons and recommend dismissal of that cause of action.

6.   Negligence and Harassment

13

For a third cause of action plaintiff alleges "negletence - harrason me when my children weren't home".  To the extent that plaintiff makes claims of negligence and harassment, even if they were supported by sufficient allegations of fact, these claims would not provide a basis for a cause of action under section 1983.  "42 U.S.C. § 1983 does not provide remedy for every common law tort. . .." *Johnson v. Wigger*, No. 9:07-CV-0024, 2009 WL 2424186, at * 8 (N.D.N.Y. 2009) (Scullin, S.J. & Lowe, M.J.) (citing *Williams v. Pecchio*, 543 F. Supp. 878, 879 (W.D.N.Y. 1982)). "The Supreme Court has recognized that, '[i]n some circumstances, the interests protected by a particular brand of the common law of torts may parallel closely the interests protected by a particular constitutional right,' (citation omitted); still, it is only the violation of a constitutional right that is actionable and compensable under section 1983.  'The validity of the claim must [therefore] be judged by reference to the specific constitutional standard which governs that right . . . .'"  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (citation omitted).

"'It is well established that an allegation of mere negligence is generally insufficient to sustain a § 1983 claim.'" *Gonzalez v. Lufkin*, No. 08-CV-1134, 2009 WL 5219018, at *3 (E.D.N.Y. Dec. 28, 2009) (quoting

*Camacho v. City of New York Office of Child Support*, No. 05-CV-2002,

2006 U.S. Dist. LEXIS 65626, at *4 (S.D.N.Y. Sept. 14, 2006)). Instead, a

plaintiff must allege facts demonstrating a "'deliberate indifference' "-i.e.,

that the actor had actual knowledge of impending harm which he

consciously refused to prevent." *Id.* (quoting *Hoisington*, 55 F. Supp. 2d at

216); *see also Richards v. City of New York*, 433 F. Supp. 2d 404, 424

(S.D.N.Y. 2006).

Plaintiff's conclusory and allegations simply do not meet this

requirement, and therefore fail to state a plausible violation of his civil

rights based upon defendant's deliberate indifference.  Any cause of action

for harassment, which the court liberally construes as for intentional

infliction of emotional distress, likewise fails to state a plausible claim, even

assuming it could support a claim under section 1983, since the allegations

in plaintiff's complaint fail to show that he was subjected to extreme and

outrageous conduct.[5]  *See Williams v. City of Mount Vernon*, 428 F. Supp.

---

[5]       To state a claim for intentional infliction of emotional distress, a plaintiff
must plead:

> (1) extreme and outrageous conduct; (2) intent to cause, or disregard of
> a substantial probability of causing, severe emotional distress; (3) a
> causal connection between the conduct and injury; and (4) severe emotional distress.

*Wait v. Beck's North Am., Inc.*, 241 F. Supp. 2d 172, 180-81 (N.D.N.Y.2003).

15

2d 146, 160 (S.D.N.Y. 2006).

      7.   <u>Immunity</u>

Even if plaintiff had stated a plausible claim against defendant

Guzman, it appears that any such claims, in any event, would be subject to

dismissal on the basis of statutory immunity provided under New York law.

In this regard, section 419 of the New York Social Services Law ("Social

Services Law") provides that

> [a]ny person, official, or institution participating in
> good faith in the providing of a service pursuant to
> section four hundred twenty-four of this title, the
> making of a report, the taking of photographs, the
> removal or keeping of a child pursuant to this title,
> or the disclosure of child protective services
> information in compliance with sections twenty, four
> hundred twenty-two and four hundred twenty-two-a
> of this chapter shall have immunity from any liability,
> civil or criminal, that might otherwise result by
> reason of such actions. For the purpose of any
> proceeding, civil or criminal, the good faith of any
> such person, official, or institution required to report
> cases of child abuse or maltreatment or providing a
> service pursuant to section four hundred
> twenty-four or the disclosure of child protective
> services information in compliance with sections
> twenty, four hundred twenty-two and four hundred
> twenty-two-a of this chapter shall be presumed,
> provided such person, official or institution was
> acting in discharge of their duties and within the
> scope of their employment, and that such liability

> did not result from the willful misconduct or gross
> negligence of such person, official or institution.

N.Y. Social Services Law § 419.  This provision creates qualified immunity

from civil and criminal liability resulting from an investigation conducted

under Social Services Law Article 6 as long as the individual conducting

that investigation was acting within the scope of his or her employment and

did not engage in willful misconduct or gross negligence.  *Preston v. New

York*, 223 F. Supp. 2d 452 (S.D.N.Y. Jun. 27, 2002) (citation omitted), *aff'd*,

87 Fed. App'x 221 (2d Cir. 2004); *see also Rine v. Chase*, 2309 A.D.2d

796, 765 N.Y.S.2d 648 (2d Dep't 2003).  "Moreover, [the Social Services

Law] creates a statutory presumption that actions taken to protect a child

are made in good faith[,]" and only a persuasive showing of bad faith can

over come that presumption, even on a section 1915(e) review.  *Preston*,

223 F. Supp. 2d at 471-72 (citation omitted); *see also Oglesby*, 2007 WL

1879723, at * 5.

The complaint does not allege facts showing bad faith on the part of

Guzman.  As a result, she appears to be protected by the statutory

immunity afforded under Social Services Law § 419.

D.   Nature of Dismissal

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

17

litigant without granting leave to amend *at least* once if there is any

indication that a valid claim might be stated.  *Gomez v. USAA Federal*

*Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Branum v. Clark*, 927

F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P.

15(a) (leave to amend "shall be freely given when justice so requires"); *see*

*also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003

(E.D.N.Y.1995) (leave to replead granted where court could not say that

under no circumstances would proposed claims provide a basis for relief).

     When affording plaintiff the special leniency to which he is entitled as

a *pro se* litigant, at this early juncture I cannot conclude with absolute

certainty that plaintiff has no cognizable cause of action.  Accordingly, in

the event that my recommendation is adopted and plaintiff's complaint is

dismissed, I further recommend that plaintiff be permitted leave to file an

amended complaint.

     In this regard, plaintiff is advised that the law in this circuit clearly

provides that "complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a

deprivation of rights, instead of a litany of general conclusions that shock

but have no meaning."  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995

) (McAvoy, C.J.)(citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)

(other citations omitted)); *Pourzandvakil v. Humphry*, No. 94-CV-1594,

1995 U.S. Dist. LEXIS 7136, at *24-25 (N.D.N.Y. May 22, 1995) (Pooler,

D.J.) (citation omitted).  In any amended complaint, if plaintiff is given leave

and so chooses to file one, plaintiff therefore must clearly set forth the

facts, including the wrongful acts that give rise to the claim, the dates,

times and places of the alleged acts, and each individual(s) who committed

each alleged wrongful act.  Such an amended complaint, must replace the

existing second amended complaint, must be a wholly integrated and

complete pleading that does not rely upon or incorporate by reference any

pleading or document previously filed with the court, *see Harris v. City of

N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp,

Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), and should

specifically allege facts indicating the involvement of each of the named

defendants in the constitutional deprivations alleged in sufficient detail to

establish the they were tangibly connected to those deprivations.  *See

Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986).

III.   <u>CONCLUSION</u>

Plaintiff's barebones complaint, apparently relating to a Child

Protective Services investigation conducted by defendant Guzman, contains little more than unsupported legal conclusions, and is therefore patently insufficient to state plausible civil rights violations.  Additionally, it seems clear that plaintiff lacks standing to pursue claims on behalf of his sons, or for any alleged criminal violations.  For all of the foregoing reasons, the plaintiff's complaint should be dismissed pursuant to section 1915(e)(2)(B) for failure to state a cause of action and as frivolous, with leave to replead section 1983 claims on his own behalf only.

Accordingly, it is hereby respectfully,

RECOMMENDED that plaintiff's complaint be DISMISSED in its entirety, with leave to amend as to section 1983 claims asserted on his own behalf within thirty days of any decision adopting my recommendation in full, and that in the event that plaintiff fails to do so that the action be DISMISSED without any further action by the court .

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) be GRANTED; and it is further,

ORDERED that the clerk of the court serve a copy of this report, recommendation, and order upon the plaintiff in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:       May 4, 2012
             Syracuse, NY

21



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* United States v. One Parcel Of Property Located At 414 Kings Hwy., 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See* United States v. One Parcel Of Property Located At 414 Kings Hwy., No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.
Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,
v.
Christopher ARTUZ, Warden Philip Coombe,
Commissioner Sergeant Ambrosino Doctor Manion
Defendants.
No. 95 CIV. 4768(JSR).

Nov. 30, 1998.
Mr. Theodore Hudson, Great Meadow Correctional
Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New
York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.
    *1 Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's
complaint alleges defendants violated his constitutional
rights while he was an inmate at Green Haven
Correctional Facility.[FN1] Plaintiff's complaint was
dismissed *sua sponte* by Judge Thomas P. Griesa on June
26, 1995 pursuant to 28 U.S.C. § 1915(d). On September
26, 1995, the Second Circuit Court of Appeals vacated the
judgment and remanded the case to the district court for
further proceedings.

    FN1. Plaintiff is presently incarcerated at
    Sullivan Correctional Facility.

    The case was reassigned to Judge Barbara S. Jones on
January 31, 1996. Defendants moved to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(c) on November
25, 1996. Thereafter, the case was reassigned to Judge Jed
S. Rakoff on February 26, 1997. On February 26, 1998,
Judge Rakoff granted defendants' motion to dismiss, but
vacated the judgment on April 10, 1998 in response to
plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to
dismiss.

    By Judge Rakoff's Order dated April 14, 1998, this
case was referred to me for general pretrial purposes and
for a Report and Recommendation on any dispositive
motion. Presently pending is defendants' renewed motion
to dismiss. Plaintiff filed a reply on July 6, 1998. For the
reasons discussed below, plaintiff's complaint is dismissed
without prejudice, and plaintiff is granted leave to replead
within thirty (30) days of the date of the entry of this
order.

FACTS

    Plaintiff alleges that he was assaulted by four inmates
in the Green Haven Correctional Facility mess hall on
March 14, 1995. (Complaint at 4.) He alleges that he was
struck with a pipe and a fork while in the "pop room"
between 6:00 p.m. and 6:30 p.m. (Complaint at 4–5.)
Plaintiff contends that the attack left him with 11 stitches
in his head, chronic headaches, nightmares, and pain in his
arm, shoulder, and back. (*Id.*) Plaintiff also states that
Sergeant Ambrosino "failed to secure [the] area and
separate" him from his attackers. (Reply at 5.) Plaintiff's
claim against Warden Artuz is that he "fail [sic] to qualify
as warden." (Complaint at 4.) Plaintiff names
Commissioner Coombes as a defendant, alleging Coombes
"fail [sic] to appoint a qualified warden over security."
(Amended Complaint at 5.) Plaintiff further alleges that
Dr. Manion refused to give him pain medication.
(Complaint at 5.) Plaintiff seeks to "prevent violent
crimes" and demands $6,000,000 in damages. (Amended
Complaint at 5.)

    Defendants moved to dismiss the complaint, arguing
that: (1) the Eleventh Amendment bars suit against state
defendants for money damages; (2) the plaintiff's
allegations fail to state a claim for a constitutional
violation; (3) the defendants are qualifiedly immune from
damages; and (4) plaintiff must exhaust his administrative
remedies before bringing this suit.

DISCUSSION

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

I find that plaintiff's complaint runs afoul of Rules 8 and 10 of the Federal Rules of Civil Procedure and dismiss the complaint without prejudice and with leave to amend. Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C.1977)); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

*2 Rule 10 of the Federal Rules of Civil Procedure requires, inter alia, that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. Moore's Federal Practice, Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. Id.FN2 The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." Sandler v. Capanna, 92 Civ. 4838, 1992 WL 392597, *3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1323 at 735 (1990)).

FN2. Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. Id.; see also Salahuddin v. Cuomo, 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. In those cases in which the court dismisses a pro se complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a pro se litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. See Salahuddin, 861 F.2d at 42–42; see also Doe v. City of New York, No. 97 Civ. 420, 1997 WL 124214, at *2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's pro se complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

S.D.N.Y.,1998.

Hudson v. Artuz
Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)

(Cite as: 1995 WL 236245 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,
v.
Heather WOLLOWITZ, Attorney, Defendant.
No. 95–CV–0272 (TJM) (RWS).

April 10, 1995.
James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.
*I. Background*
**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and

costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. See generally *Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, *3, 1994 U.S.Dist. LEXIS 17698, *8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)

(Cite as: 1995 WL 236245 (N.D.N.Y.))

under the color of state law. *See, e.g., Rounseville v. Zahl, 13 F.3rd 625, 628 (2d Cir.1994)* (noting state action requirement under *§ 1983); Wise v. Battistoni, 92–Civ–4288, 1992 WL 380914, *1, 1992 U.S.Dist. LEXIS 18864, *2–3 (S.D.N.Y. Dec. 10, 1992)* (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise, 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; see also D'Ottavio v. Depetris, 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).*

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

N.D.N.Y.,1995.

Myers v. Wollowitz
Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
David SPICKERMAN, 02-B-0980, on his own behalf
and on behalf of all other plaintiffs; Brittany S., by her
biological father, David Spickerman; Timothy B., by his
biological father, David Spickerman; and Dalyn B., by
his next of friend, David Spickerman, Plaintiffs,
v.
Ronald CARR, Caseworker for Wayne County,
Department of Social Services, Child Protective
Agency; Lisa Graf, Caseworker for Wayne County,
Department of Social Services, Child Protective
Agency; Shannon Brendlinger, Preventive Service
Caseworker for Wayne County, Department of Social
Service, Child Protect Agency; Peggy McGall,
Caseworker Supervisor for Wayne County, Department
of Social Services, Child Protective Agency; Joan Kane,
Caseworker Supervisor for Wayne County, Department
of Social Services, Child protective Agency; Richard
Leblanc, Caseworker Supervisor for Wayne County,
Department of Social Services, Child Protective
Agency; M. Josh McCrossen, Commissioner for Wayne
County, Department of Social Service, Child Protective
Agency; Linda Kurtz, Director of Rochester Regional
Office; George E. Pataki, Governor of the State of New
York; and Brian J. Wing, Acting Commissioner of the
Department of Social Services of the State of New
York, Defendants.
No. 04-CV-6226P.

July 7, 2004.
David Spickerman, Attica, NY, pro se.

MEMORANDUM and ORDER

ELFVIN, J.

INTRODUCTION
**\*1** Plaintiff David Spickerman ("Spickerman"), an
inmate of the Wyoming Correctional Facility, has filed

this *pro se* action seeking relief under 42 U.S.C. § 1983
(Docket No. 1) and has both requested permission to
proceed *in forma pauperis* and filed a signed
Authorization (Docket No. 2). Additionally, he has filed
this complaint on behalf of others. He intends to pursue
claims on behalf of the minor children named as plaintiffs.
Plaintiff claims that the defendants, state and county
officials related to the Department of Social Services,
violated the constitutional rights of each and all of the
plaintiffs by failing to afford them the procedural and
agency protections necessary to protect their liberty
interest in their familial relationships.

For the reasons discussed below, Spickerman's
request to proceed as a poor person is granted, the claims
raised on behalf of the additional plaintiffs are dismissed,
and service by the U.S. Marshals is ordered with respect
to the remaining claims.

DISCUSSION

A. Named Plaintiffs
Plaintiff David Spickerman is proceeding *pro se,* on
his own behalf. To the extent that he also has brought this
claim on behalf of the minor children, however, he may
not act as the children's representative in this action. He is
not an attorney admitted to practice before this Court and
therefore may not proceed on behalf of the minor children.
*See Wenger v. Canastota Central School District,* 146
F.3d 123, 124-125 (2d Cir.1998); *Cheung v. Youth
Orchestra Foundation of Buffalo,* 906 F.2d 59, 61 (2d
Cir.1990); Fed.R.Civ.P. 17(c). Moreover, Spickerman
may not proceed *pro se* on the minor's behalf. "It goes
without saying that it is not in the interests of minors or
incompetents that they be represented by non-attorneys.
Where they have claims that require adjudication, they are
entitled to trained legal assistance so their rights may be
fully protected." *Cheung,* 906 F.2d at 61. Finally, to the
extent that the infant plaintiffs Brittany S., Timothy B.,
and Dalyn B. can be viewed as attempting to raise claims
*pro se* on their own behalf, such claims are also dismissed.
A minor may not bring an action on his own behalf in
federal court. Fed.R.Civ.P. 17(c). Bringing the claims of
such minor children would require the representation of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

counsel.<sup>FN1</sup> Accordingly, the claims of, or on behalf of, Brittany S., Timothy B., and Dalyn B. are hereby dismissed.

> FN1. Spickerman has not made a formal application for appointment of counsel, nor indicated that counsel is not available to the children. Should any action be commenced with respect to the minor children, a determination of whether to appoint counsel must take several factors into account. In a *pro se* case brought by a party who is unable to represent himself because he is a minor or is otherwise incompetent, the court must consider whether, without appointment of counsel, the case will go forward at all. Such a party will have no means of asserting his rights other than through counsel. If the infant or incompetent party is unable to retain private counsel and is also eligible for poor person status, the court must determine whether appointment of counsel would be in order. Of course, this does not mean that appointment of counsel is automatic; appointment of appointment should only be made after an evaluation of the allegations and issues presented in the action. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997); *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986); *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989).

B. Spickerman's Claims

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

**\*2** Spickerman raises several allegations regarding the policies and procedures of the defendants as they impacted his familial relations with his children and his family's well-being. It is well settled that parents have a protected liberty interest in the care and rearing of their children. *See, e.g., Tenenbaum v. Williams,* 193 F.3d 581 (2d. Cir.1999); citing *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir.1991); *van Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 867 (2d Cir.1990); *Stanley v. Illinois,* 405 U.S. 645, 649-52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (rights to conceive and raise one's children have been deemed "essential" and "basic civil rights of man"); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (the custody, care and nurture of the child reside first with the parents); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (liberty guaranteed by the Fourteenth Amendment includes the right to establish a home and bring up children); *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977) (recognizing the right of the family "to remain together without the coercive interference of the awesome power of the state"). He implicates not only the individual actions of the case workers initially involved, but also the Wayne County Child Protective Agency policies.

It may be that Spickerman may fail to prove his claims, but the Court's uncertainty that a plaintiff will ultimately succeed on the merits is no justification for a dismissal at this stage of the case. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *and see McEachin v. McGuinnis,* 357 F.3d 197 (2d Cir.2004). Since the Court cannot say at this stage that " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief,' " *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), Spickerman's claims on his own behalf may go forward as pleaded.

Nevertheless, "[t]o state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v.. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). A prerequisite for liability under § 1983 is personal involvement by the defendants in the alleged constitutional deprivation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986); *and see Hayut v. State University of New York,* 352 F.3d 733 (2d. Cir.2003).

Such involvement on the part of a supervisory official may be shown in one of several ways:

**\*3** if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

*Sealey v. Giltner,* 116 F.3d at 51 (citing *Williams v. Smith,* 781 F.2d at 323-24). Spickerman has not established the personal involvement of defendants George E. Pataki, Linda Kurtz and Brian J. Wing in the complained-of events. He simply alleges that he wrote to them and cites to their supervisory role in the state hierarchy. He does not allege that these officials acknowledged the letters, responded, or took any other action. This is not sufficient to find personal involvement. *Davis v. City of New York,* 2000 WL 1877045, \*9 (S.D.N.Y.2000) (finding no personal involvement where supervisory official ignored letter of protest and had no other involvement in the alleged constitutional deprivation); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 132-133 (W.D.N.Y.2000) (granting summary judgment to supervisory official on ground that no personal involvement in constitutional violation shown where defendant merely ignored prisoner's letter of complaint); *Pritchett v. Artuz,* 2000 WL 4157, at \*6 (S.D.N.Y.2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored prisoner's letter of complaint); *Thomas v. Coombe,* 1998 WL 391143, at \*6 (S.D.N.Y.1998) ("the fact that an official ignored a

letter alleging unconstitutional conduct is not enough to establish personal involvement"). Accordingly, Spickerman's claims against George E. Pataki, Linda Kurtz and Brian J. Wing are dismissed with prejudice.

CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, the claims brought by and/or on behalf of Brittany S., Timothy B., and Dalyn B. are dismissed. Spickerman's claims against Pataki, Kurtz and Wing are dismissed for failure to state a claim. The U.S. Marshal is directed to serve the summons and complaint on the remaining defendants regarding Spickerman's claims.

ORDER

IT HEREBY IS ORDERED, that Spickerman's request to proceed *in forma pauperis* is granted;

FURTHER, that the claims brought by and/or on behalf of Brittany S., Timothy B., and Dalyn B. are dismissed;

FURTHER, that Spickerman's claims against George E. Pataki, Linda Kurtz and Brian J. Wing are dismissed with prejudice for failure to state a claim;

FURTHER, that the Clerk of the Court is directed to terminate plaintiffs Brittany S., Timothy B. and Dalyn B., and defendants George E. Pataki, Linda Kurtz and Brian J. Wing as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon defendants without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*4** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

W.D.N.Y.,2004.

Spickerman v. Carr
Not Reported in F.Supp.2d, 2004 WL 1529219
(W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Fred BROWN, Plaintiff
v.
Andrew SENIUK, N.Y.P.D.; Mr. Clarke, Ms. Bernstein,
Ms. Katz, Assistant District Attorneys; Richard Brown,
District Attorney, Queens County, New York; and
Pagona, N.Y.P.D., Defendants.
No. 01 CV 1248 SJ.

March 25, 2002.
Fred Brown, a/k/a James Mallard, Mohawk Correctional
Facility, Rome, NY, Petitioner, pro se.

Michael D. Hess, New York City Law Department, New
York, NY, By: Eugene Bernard Sohn, for Respondents, of
counsel.

*MEMORANDUM & ORDER*

JOHNSON, J.

**\*1** Plaintiff Fred Brown, a/k/a James Mallard,
("Brown" or "Petitioner") brought the above-captioned
action against New York City Police Officers Andrew
Seniuk and "Pagona," Queens County District Attorney
Richard Brown, and Assistant District Attorneys "Clark,"
"Burnstien," and "Katz" (collectively, "Defendants"). His
action, initially entitled a "felony complaint," was
construed as a civil action under 42 U.S.C. § 1983.
Presently before the Court is Defendants' motion to
dismiss the complaint. For the following reasons,
Defendants' motion is granted in its entirety.

FACTUAL BACKGROUND

This civil action arises out of the State court criminal
conviction of Plaintiff Fred Brown for a number of theft
offenses. Plaintiff was arrested on June 11, 1996, charged
with Criminal Possession of Stolen Property, Grand
Larceny, Burglary, Possession of Burglar's Tools,

Resisting Arrest, and Illegal Possession of a Vehicle
Identification Number, and indicted by a Grand Jury on
charges of Criminal Possession of Stolen Property in the
Second, Fourth, and Fifth Degrees, Grand Larceny in the
Second and Fourth Degrees, Burglary in the Third Degree,
Criminal Mischief in the Third Degree, and Unauthorized
Use of Vehicle in the Third Degree. On January 23, 1998,
he was convicted by a jury in the New York Supreme
Court, Queens County, of Criminal Possession of Stolen
Property in the Second and Fourth Degrees, Grand
Larceny in the Second and Fourth Degrees, Burglary in
the Third Degree, and Unauthorized Use of a Vehicle in
the Third Degree. He was sentenced on February 25, 1998
to seven and one half to 15 years. (Certificate of
Disposition # 13837, Attached to Sohn Decl. as Ex. E.)
Petitioner appealed his conviction to the Appellate
Division, Second Department, which affirmed on May 30,
2000. State v. Brown, 709 N.Y.S.2d 413 (2000). The
Court of Appeals denied leave to appeal that decision on
August 28, 2000. State v. Brown, 715 N.Y.S.2d 218
(2000). Plaintiff filed the instant lawsuit on March 13,
2001, alleging a variety of criminal actions by Seniuk,
Clarke, Katz, and Bernstein. On June 20, 2001, or
thereabouts, Plaintiff submitted an amended complaint,
which was filed with the Court on July 2, 2001. The
amended complaint added District Attorney Richard
Brown and New York Police Officer Pagona as
Defendants.FN1 Defendants filed this motion to dismiss on
June 12, 2001.

FN1. Plaintiff's "Amended and Supplemental
Pleading Pursuant to 15(a) RCP" was apparently
filed after Defendants served their Motion to
Dismiss on or about June 12, 2001. Rule 15(a) of
the Federal Rules of Civil Procedure specifically
states that "[a] party may amend the party's
pleading once as a matter of course any time
before a responsive pleading is served.…
Otherwise, a party may amend the party's
pleading only be leave of court or by written
consent of the adverse party." Plaintiff did not
seek leave of the Court, nor did he request
Defendants' consent to amend his complaint.
Accordingly, Defendants urge the Court to reject

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

Plaintiff's amended complaint. However, the Court recognizes the difficulty of proceeding *pro se* and from within custody, considers that Plaintiff may not have received Defendants' Motion to Dismiss prior to filing his Amended Complaint, and construes his amended complaint as a request to amend his original pleading. Defense counsel was notified of the addition of two new individual defendants and the additional claims against them in time to address the amended complaint in the Reply brief. Thus, the Court will accept and consider Plaintiff's Amended Complaint.

DISCUSSION

Plaintiff initially styled his complaint a "Felony Complaint Pursuant to Rule 3, and 23." However, it is axiomatic that a private citizen cannot bring a criminal complaint. *See e.g. Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo–American jurisdictions by private complaints."). Plaintiff's complaint alleged a violation of his civil rights involving his conviction. Accordingly, the Court construes his complaint as a § 1983 civil action seeking relief from violations of his constitutional rights. Plaintiff's Claims Under Section 1983

**\*2** Plaintiff's remedies under § 1983 are limited. The Supreme Court held in *Preiser v. Rodriguez* that the exclusive remedy for a state prisoner challenging the fact or length of his confinement is through habeas corpus relief. 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983."). However, *Preiser* did not limit state prisoners' use of § 1983 in claims for damages. *Id.,* 411 U.S. at 494 ("If a state prisoner is seeking damages ... he is seeking

something other than immediate or more speedy release—the traditional purpose of habeas corpus. Accordingly, ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court."). Thus, this Court does have jurisdiction to hear § 1983 damages actions from state prisoners.

However, Plaintiff in this case does not make out a claim for relief under § 1983. In *Heck v. Humphrey,* the Supreme Court applied the standard used for civil actions for malicious prosecution to § 1983 damages actions, and required plaintiffs to show that the allegedly unconstitutional conviction had already been invalidated. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Plaintiff here concedes that his conviction has not been overturned. Instead, he argues that it "is invalid as it was had in violation of Criminal Procedure Rules." (Pet.'s Reply Opp. Mot. Dismiss at 2.) His allegation is insufficient to meet the Supreme Court's requirement that plaintiffs "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487. Plaintiff cannot show that his conviction was terminated in his favor by any of these means. Accordingly, his allegations must be dismissed as legally insufficient to state a claim against any of the Defendants under § 1983.

Plaintiff's Potential Claims for Malicious Prosecution and False Arrest

In their motion to dismiss, Defendants also responded to possible actions for false arrest and malicious prosecution. Neither of these actions are available to Plaintiff. First, a claim for false arrest would be time-barred. The statute of limitations for a constitutional claim for false arrest begins to run at the time of the arrest.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

*Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–219 (E.D.N.Y.1994). Since Plaintiff was arrested on June 11, 1996, he would be required to have filed his complaint alleging false arrest by June 11, 1999. This action was not commenced until February 1, 2001. Accordingly, a claim for false arrest would be time-barred.

**\*3** Second, Plaintiff cannot make out a claim for malicious prosecution, because he fails to establish the elements necessary to sustain a claim. In order to succeed on a claim of malicious prosecution, whether brought under § 1983 or New York State law, Plaintiff must show that (1) the defendants commenced or continued a criminal proceeding against the plaintiff, (2) which ended in the plaintiff's favor, (3) that the defendants did not have probable cause for such a proceeding, and (4) that the defendants acted with actual malice. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 417 (2d Cir.1999). As discussed above, Plaintiff has not shown that the criminal proceedings against him have ended in his favor. Thus he cannot make out a claim for malicious prosecution regarding the charges on which he was convicted and which convictions still stand.

Plaintiff is also precluded from asserting a claim for malicious prosecution on the basis of the additional charges for which he was not convicted. The charges for Possession of Burglary Tools and Resisting Arrest, which were dropped prior to trial, are time-barred by the Statute of Limitations. The Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law. McKinney's CPLR § 215. Those additional charges were terminated, at the latest, on May 19, 1997. Plaintiff did not commence his suit until February 1, 2001.

Nor can he state a claim for malicious prosecution on the basis of the charges for Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree. Where, as here, the criminal prosecution has resulted in conviction on some charges, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on the charge or charges for which the individual was not convicted. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989); *Picardo v. New York Police*

*Department, et al.,* 1998 WL 812049, at \*3 (S.D.N.Y.) Such analysis should consider whether the elements of each charge are similar or different and whether one charge is a lesser included offense of another. *Janetka,* 892 F.2d at 190. The Court should also consider whether the charges on which the individual was convicted were more or less serious than the charges which were dismissed or upon which the individual was acquitted. *See Pichardo,* 1998 WL 812049, at \*4.

Here, Plaintiff was indicted on several related charges stemming from a single event. He was convicted of most of these related charges, including Criminal Possession of Stolen Property in the Second and Fourth degrees. The charges upon which Plaintiff was not convicted, Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree, are no more serious than the charges for which Plaintiff was convicted. This Court finds that the charges are sufficiently related to the charges on which Plaintiff was convicted, and thus may not be the basis for a claim of malicious prosecution.

Plaintiff's Allegations of Conspiracy

**\*4** Plaintiff's initial complaint alleges acts of criminal conspiracy. However, Plaintiff does not assert sufficient allegations to make out a claim for conspiracy to violate his civil rights. In order to make out a claim of conspiracy to deprive constitutional rights under 42 U.S.C. § 1983, the plaintiff must show that there was: (1) an agreement among co-conspirators; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal, thus causing damages. *Pangburn v. Culbertson,* 200 F .3d 65, 72 (2d Cir.1999). In addition to asserting these elements, the plaintiff must allege specific facts that show that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 490 U.S. 386 (1991); *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) ("Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). In the instant case, Plaintiff alleges that ADA Clarke and Officer Seniuk conspired "to obtain an indictment at any cost,"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

and that Seniuk and Bernstein conspired "to obtain a conviction at any cost." (Pl.'s Opp. Mot. Dismiss at 7.) He also recites the alleged acts of the Individual Defendants, including making false statements and falsifying reports, presenting false evidence, giving hearsay testimony (Compl. at 2–3), and failing "adequately to train and supervise assistant district attorney(s) Mr. Clarke, Ms. Katz and Ms. Burnstein to insure that they meet their constitutional obligation" (Amend. Compl. at 6). However, Plaintiff's argument is lacking specific facts that show an agreement among the alleged co-conspirators or that the Individual Defendants acted with a shared purpose or common design. While New York law does allow the existence of civil conspiracies to be inferred from circumstantial evidence, "neither conjecture, surmise, nor suspicion can take the place of evidence." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431 (S .D.N.Y.2000) (citing *Cooper v. Maurer,* 37 N.Y.S.2d 992, 996 (N.Y.Sup.Ct.1942)). Here, Plaintiff fails to present evidence, either circumstantial or direct, sufficient to infer the existence of a conspiracy.

As this Court finds that Plaintiff's complaint fails to state facts sufficient to maintain a § 1983 claim for damages, and finding no other claim for relief that may be granted, the Court need not consider Defendants' affirmative defenses of qualified immunity and prosecutorial immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is hereby GRANTED in its entirety. The Clerk of the Court is directed to close this proceeding with prejudice.

SO ORDERED.

E.D.N.Y.,2002.

Brown v. Seniuk
Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.
Everett W. COX III, et al., Plaintiffs,
v.
WARWICK VALLEY CENTRAL SCHOOL DISTRICT, et al., Defendants.
No. 7:07–CV–10682.

Aug. 16, 2010.
OPINION & ORDER [Resolving Doc. No. 33]

JAMES S. GWIN,[FN1] District Judge.

> FN1. The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by designation.

**\*1** The Defendants move the Court for summary judgment in this [42 U.S.C. § 1983](#) action. [Doc. 33.] The Plaintiffs oppose the Defendants' motion. [Doc. 41.] The Defendants have replied. [Doc. 38.] For the following reasons, the Court **GRANTS** the Defendants' motion for summary judgment.

### I. Background

With their Complaint, the Plaintiffs sue for damages they allege they suffered as a result of a series of incidents involving their son and the Defendants. Plaintiffs Everett W. Cox III ("Cox") and Nan Ping Peng ("Peng") are the parents of Peng Raphael Cox ("Raphael") and enjoy joint custody of Raphael. [Doc. 1 at 1.][FN2] During the 2006–2007 school year, Raphael was an eighth-grade student at Warwick Valley Middle School, the only middle school that Defendant Warwick Valley Central School District ("the School District") operates. [Doc. 33–5 at 2.] Defendant John J. Kolesar, Jr. is the principal of Warwick Valley Middle School. [Doc. 33–6 at 1.] Defendant Frank Greenhall was the Superintendent of Schools for the School District. [Doc. 33–5 at 1.] Defendant Debra Girardi is a school psychologist who worked for the School District. [Doc. 1 at 2.]

> FN2. The Court generally cites to the Complaint or to the Defendants' Statement of Undisputed Facts for factual background. All citations to facts in the Complaint or the Defendants' Statement of the Facts are undisputed or admitted, unless otherwise noted.

On October 13, 2006, Plaintiff Peng told Middle School Assistant Principal Ernest Jackson that Raphael had been bullied, was angry, and might attempt to bring a weapon to school to defend himself. [Doc. 33–3 at 2.] Jackson relayed this information to Defendant Kolesar. [*Id.*] Kolesar subsequently searched Raphael's school locker, and discovered fireworks, a lighter, and a bottle of alcohol, all of which middle school students are prohibited from possessing in school. [*Id.*] As a result, the school suspended Raphael, out-of-school, for five days. [Doc. 33–6 at 3.]

Following the suspension, on October 20, 2006, Raphael and his parents met with Principal Kolesar and Superintendent

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

Greenhall to discuss Raphael's behavior problems. [Doc. 33–3 at 3; Doc 33–9.] At this meeting, Raphael and his parents signed a "Behavioral Contract," which provided, *inter alia,* that the school could more severely discipline Raphael for future incidents of misconduct. [*Id.*]

On November 30, 2006, one of Raphael's teachers filed an incident report relating that Raphael had made an inappropriate comment in class about flying a plane into a building. [Doc. 33–3 at 3; Doc. 33–18.] About a month later and on December 19, 2006, the school district suspended Raphael after he was involved in a fight with another student. [Doc. 33–3 at 3.]

On January 25, 2007, the school district suspended Raphael for vandalism after he was seen writing on a school wall. [Doc. 33–3 at 3; Doc. 33–20.] The next day, a teacher observed Raphael possessing a piece of metal in one of his classes. [Doc. 33–3 at 3.] Principal Kolesar subsequently searched Raphael's locker and discovered another piece of metal. [*Id.* at 3–4; Doc. 33–21.] Despite the fact that Kolesar determined that the pieces of metal could be considered weapons, and that Raphael had violated the Code of Conduct and his Behavioral Contract, Kolesar did not suspend Raphael at that time. [Doc. 33–3 at 6; Doc. 33–6 6.] Kolesar says that he decided to take a "therapeutic" approach to dealing with Raphael. [Doc. 33–6 6.] On February 2, 2007, Kolesar spoke with Raphael regarding comments Raphael had made at school about "blowing up" things; Kolesar determined that Raphael had been talking about "soda bombs" and "blowing up" condoms. [Doc. 36 at 6; Doc. 33–6 at 6–7.]

**\*2** During the 2006–2007 school year, Raphael's English and Language Arts ("ELA") class required students to complete several writings in a journal, both fictional and nonfictional. [Doc. 33–3 at 5; Doc. 33–7 at 2.] In or around January 2007, Raphael wrote the essay "Perfection" for an ELA class assignment. [Doc. 35 at 4, n. 3.] In this essay, Raphael described a "perfect day" in which he would have a helicopter with "semi-machine guns on both sides and below can [sic] send missiles that can destroy a whole town." [Doc. 33–32 at 9.] Raphael then wrote: "That's when I'm mad or just in a regular mood. On better days I will instead of shooting I would shoot gum balls and drop a[sic] ice-cream truck." [*Id.*]

Prompted at least in part by the "Perfection" essay, on February 8, 2007, Kolesar, Girardi, and other school employees met with Raphael, Cox, and Peng to discuss Raphael's behavior. [Doc. 33–3 at 4; Doc. 33–6 at 7; *see* Doc. 35 at 4, n. 4.] The School District, and Defendant Girardi in particular, recommended that Raphael undergo a psychiatric evaluation. [Doc. 33–3 at 4; Doc. 33–6 at 7; Doc. 37–5 at 4 (Cox Dep. at 31).] The Plaintiffs did not want Raphael to see a psychiatrist, but suggested that a psychologist evaluate him. [Doc. 33–6 at 7.] The Plaintiffs claim that Kolesar agreed that it would be okay if Raphael was evaluated by a psychologist. [Doc. 35 at 6–7; Doc. 37–5 at 4 (Cox Dep. at 31) .] Plaintiff Cox told Kolesar sometime after the February 8 meeting that he and Plaintiff Peng were taking Raphael to a psychologist. [Doc. 33–6, Kolesar Aff. at 7–8; Doc. 37–5 at 4–5, 8–9 (Cox Dep. at 31–32, 38–39); *see also* Doc. 33–25.] However, between February 8, 2007 and March 20, 2007, the Defendants received no documentation from the Plaintiffs concerning a psychologic or psychiatric evaluation of Raphael. [Doc. 33–3 at 5; Doc. 33–25.]

On March 20, 2007, Principal Kolesar sent a letter to the Plaintiffs asking them to consent to a psychiatric evaluation of Raphael. [Doc. 33–25.] The Plaintiffs claim that on March 29, 2007, Plaintiff Cox delivered to the middle school an evaluation from Raphael's psychologist, Dr. Joerger. [Doc. 36 at 7; Doc. 37–5 at 9–11 (Cox. Dep. at 39–41).] Cox emailed Kolesar earlier that day to say he would be dropping off the evaluation. [Doc. 37–2, Ex. 9; Doc. 37–5 at 10–11 (Cox Dep. at 40–41); Doc. 33–6 at 11; Doc. 37–6 at 11–12 (Kolesar Dep. at 10–11).] However, Kolesar says that he did not receive the psychologist's evaluation on March 29, 2007, and that he had not seen the report prior to the incidents described below. [Doc. 37–6 at 11–12 (Kolesar Dep. at 10–11); Doc. 33–6 at 8.]

In late March or early April 2007, Raphael submitted the essay "Racing Time" in response to an English and Language Arts class assignment. The parties dispute the topic of the assignment to which Racing Time was submitted in response. Raphael's English and Language Arts teacher, Janna Milazzo, says the topic she gave the students was: "24 Hours: How would you spend

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

24 hours if money and travel time were not an option [sic]?" [Doc. 33–7 at 2; Doc. 33–31 .] The Plaintiffs claim that Raphael understood the assigned topic to be: "What would you do if you knew you only had 24 hours to live?". [Doc. 36 at 8; Doc. 33–26.] The essay "Racing Time" read:

**\*3** I usually get this question a lot and every time its [sic] something different. But I won't lie about anything. First I would go and gather all my friends somehow violently or peacefully then rent the biggest yacht in the world and head over to the Carribean [sic] and then we would then go sky diving and then we would all be downstairs drinking the finest rum, vodka, gin, and scotch and get fully intoxicated on the beach wathing [sic] the sun set and moon rise and then we would start to smoke ciggeretts, [sic] cigars, and let's just say illegal things in the U.S. Then I myself would be doing Acid and Coke and then climb palm trees and blasting Pink Floyd and all sorts of my favorite music. Then right before I would finally die I would try to say goodbye and then take one of my favorite pistols the Kugar [sic] and then put it in my mouth with a Cyanide pill and the [sic] shoot myself and then everyone would party for a week for me. Like I said I don't leave easily.

[Doc. 33–34 at 9.] The Plaintiffs present evidence that at least one other student understood the assignment to describe what she would do if she had only one day to live. [Doc. 36 at 8; Doc. 37–1, Ex 4.] However, Milazzo says that no other student submitted an essay discussing suicide in response to the topic. [Doc. 33–7 at 3.]

Milazzo brought "Racing Time" to the attention of Principal Kolesar, who then contacted Plaintiff Peng on April 19, 2007. [Doc. 33–3 at 5–6.] The parties dispute the substance of the April 19 call between Kolesar and Peng on April 19. The Plaintiffs claim that Kolesar told Peng that Raphael was going to be suspended out of school for five days and subject to a superintendent's hearing because of the essay. [Doc. 36 at 8–9; Doc. 37–4 at 12 (Peng Dep. at 85).] Kolesar says that he called Peng to discuss "Racing Time" because he was concerned about Raphael's well-being, particularly his mental health. [Doc. 33–6 at 9.]

Before school began on April 20, 2007, Kolesar, Girardi, two school guidance counselors, and a school resource officer met to discuss Raphael. [Doc. 33–3 at 6.] Girardi and Raphael's guidance counselor also met with Raphael that morning. [Doc. 33–4 at 5; Doc. 33–6 at 10.] At approximately 10:00 a.m. on April 20, 2007, Kolesar placed a call to the New York State Office of Child and Family Services ("CFS") hotline regarding Raphael. [Doc. 33–3 at 6; Doc. 37–1 at 23 (Ex. 8).] At approximately 10:25 a.m., Kolesar received a call from Plaintiff Peng. Kolesar did not tell Peng about the CFS call when he spoke with her. [Doc. 33–6 at 11.] Kolesar then again spoke with CFS at approximately 11:30 a.m. [Doc. 33–6 at 11; Doc. 37–1 at 23 (Ex. 8).] Kolesar also filled out a form documenting his concerns about Raphael. [Doc. 33–27.] In his report, Kolesar indicated that he suspected "lack of medical care," "inadequate guardianship," "emotional neglect," and "lack of supervision." [*Id.*] As a basis for his suspicions, Kolesar provided the following narrative: "Student has demonstrated the following: repeated violent & suicidal imagery in writings, vandalism to school, possession of alcohol, fireworks, dangerous objects—School rec: psychiatric evaluation—parents refused." [*Id.*]

**\*4** A CFS investigator arrived at the middle school sometime in the afternoon of April 20, 2007. [Doc. 33–6 at 11.] Raphael's parents also arrived later in the afternoon. [*Id.;* Doc. 37–4 at 23 (Peng Dep. at 97).] The CFS agent told Raphael's parents that Raphael must undergo an emergency psychiatric evaluation. [*Id.;* Doc. 37–5 at 16 (Cox Dep. at 59).] While Plaintiff Peng initially resisted, eventually the Plaintiffs consented to the evaluation. [Doc. 37–5 at 15–16 (Cox. Dep. at 58–59); Doc. 37–4 at 27 (Peng Dep. at 102).] With the CFS worker, the Plaintiffs and Raphael went to a nearby hospital's emergency psychiatric unit. [Doc. 37–4 at 28 (Peng Dep. at 103); Doc. 37–5 at 25 (Cox Dep. at 76).] Raphael was evaluated by a psychiatrist, a nurse, and a social worker; at approximately 2:00 a.m., the hospital released Raphael and said the Plaintiffs were free to go home. [Doc. 37–5 at 25–26 (Cox Dep. at 76–77).]

Following the events of April 20, 2007, the Plaintiffs removed Raphael from the Middle School. [Doc. 33–3 at 7.] For the remainder of the 2006–2007 semester, Raphael received at-home tutoring through the School District. [Doc. 36 at 11.] Beginning

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

in the Fall of 2007, Raphael enrolled in private school. [*Id.*]

The Plaintiffs filed a Complaint in this Court on November 29, 2007. In their Complaint, the Plaintiffs assert claims under 42 U.S.C. § 1983, alleging that the Defendants violated various of their constitutional rights. Specifically, the Plaintiffs allege (1) that the Defendants violated Raphael's right to free speech under the First Amendment; (2) that Defendants Greenhall and Kolesar, by reporting the Plaintiffs to CFS, violated the Plaintiffs' right to privacy and interfered with their right to raise their child, in violation of the due process clause of the Fourteenth Amendment; (3) that Defendants Kolesar and Greenhall, by making and approving, respectively, false accusations in the CFS report, violated the Plaintiffs' substantive due process rights because their conduct was "arbitrary, capricious, and shocking to the conscience"; and (4) that Defendants Greenhall and Kolesar violated Raphael's Fourth Amendment Rights by repeatedly searching his locker. [Doc. 1 at 10.] The Plaintiffs seek compensatory damages, including the cost of Raphael's private school education, attorneys' fees, and costs. [*Id.* at 11.]

On July 31, 2009, Defendants filed a motion for summary judgment. [Doc. 33.] In their motion, the Defendants argue (1) that the Defendants did not violate Raphael's First Amendment rights because they took no adverse action against Raphael as a result of his speech and, even if adverse action was taken, such actions were reasonable responses within the parameters that have been established for school-sponsored speech [Doc. 33–1 at 10–12; Doc. 33–2 at 13–14]; (2) that the Defendants did not violate Raphael's Fourth Amendment rights because he could have no expectation of privacy in his school locker, and, even if he did have an expectation of privacy, the search was reasonable [Doc. 33–2 at 14–19]; (3) that the Defendants did not violate the Plaintiffs' Due Process Rights because they did not deprive the Plaintiffs of any constitutionally-protected liberty or property interest as the Plaintiffs never lost custody of Raphael or suffered a "stigma" as a result of the report, and, even if the Defendants infringed upon the Plaintiffs' constitutionally-protected rights, the Defendants' actions were not arbitrary or capricious [*id.* at 19–24]; (4) that Defendant Greenhall was not involved in the locker search and therefore did not violate Raphael's Fourth Amendment rights [*id.* at 25]; and (5) that even if there had been some constitutional violation, the individual defendants are entitled to qualified immunity because their actions did not violate any clearly established rights and were objectively reasonable [*id.* at 26–30].

**\*5** The Plaintiffs oppose the Defendants' motion for summary judgment. However, the Plaintiffs withdraw their claim based upon an alleged violation of Raphael's Fourth Amendment rights and do not oppose the Defendants' motion as to this claim. [Doc. 35 at 1.] The Plaintiffs also withdraw their claims against Defendant Greenhall, who died on August 21, 2009, and against Defendant Girardi. [*Id.*] As to the remaining claims, the Plaintiffs allege that the Defendants violated Raphael's First Amendment rights because the CFS referral was an adverse action because, they argue, it was deliberately false and intended to punish Raphael and his parents, and because the school suspended Raphael to punish him for his writing. [Doc. 35 at 11–14.] They further argue that the Defendants violated the Plaintiffs' due process rights because parents have a right to be free from false reports of abuse or neglect that are not based upon a reasonable suspicion, and because the Defendants' actions were arbitrary and/or shocking to the conscience. [*Id.* at 14–16.] Finally, the Plaintiffs argue that Defendant Kolesar is not entitled to qualified immunity as a matter of law because the right at issue is clearly established and a dispute of material fact exists as to whether Kolesar's actions were objectively reasonable. [*Id.* at 17–18.]

The Defendants replied, arguing that the Plaintiffs cannot raise an essentially new First Amendment claim—that Kolesar made the CFS report to retaliate against Cox's and Peng's speech—in their opposition brief. [Doc. 38 at 2.] The Defendants argue that the Plaintiffs' First Amendment claim fails because Kolesar did not act either to retaliate against Raphael for his speech or in bad faith. [*Id.* at 5–7.] The Defendants further argue that the Court should dismiss the Plaintiffs' due process claims because the Defendants did not deprive them of any constitutionally-protected liberty or property interest as the Plaintiffs never lost custody of Raphael and cannot establish a "stigma-plus" injury. [*Id.* at 8–9.] Finally, the Defendants argue that Defendant Kolesar is entitled to qualified immunity because the Plaintiffs have offered no particularized evidence that Kolesar knowingly acted in bad faith. [*Id.* at 10.]

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997). "A fact is material ... if it might affect the outcome of the suit under the governing law." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 120 (2d Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

*6 The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *McPherson v. Coombe,* 174 F.3d 276, 279–80 (2d Cir.1999). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996) (quoting *Anderson,* 477 U.S. at 242).

## III. Analysis

*A. Fourth Amendment Claim and Claims Against Defendants Greenhall and Girardi*

In their response to the Defendants' motion for summary judgment, the Plaintiffs withdraw the following claims: (1) all claims against Dr. Frank Greenhall; (2) the First Amendment claim against Debra Girardi (the only claim against Defendant Girardi); and (3) their Fourth Amendment claim against all Defendants. The Court accordingly **GRANTS** the Defendants' motion for summary judgment with respect to these claims, dismisses the Plaintiffs' Fourth Amendment claim, and dismisses Girardi and Greenhall as parties to this case.

*B. Remaining 42 U.S.C. § 1983 Claims*

To prevail on a Section 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). The Defendants move for summary judgment and say that no reasonable juror could find that the Defendants violated any of Raphael's constitutional rights. The court will address each issue in turn.

1. First Amendment Free Speech Claim

*7 The Defendants move for summary judgment on the Plaintiffs' First Amendment claim. The Defendants first argue that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

the First Amendment claim must fail because Principal Kolesar took no "adverse action" against Raphael based on his speech, because the CFS referral cannot reasonably be understood to punish Raphael for his writing. Responding, the Plaintiffs argue that a reasonable jury could find that Kolesar intended to punish Raphael and his parents by making the CFS report. The Plaintiffs further argue that Kolesar suspended Raphael in-school as a result of "Racing Time," and that this constitutes an adverse action. The Court finds that there is at least material factual dispute as to whether Kolesar took an adverse action against Raphael as a result of his speech. Kolesar's notes indicate that Raphael served an "ISS," i.e., an in-school suspension on April 19, 2007. [Doc. 37–1 at 20 (Ex. 7).] Further, the Court will assume without deciding that the CFS report can be considered an adverse action, because, even assuming the CFS referral is an adverse action, Kolesar's actions did not violate Raphael's First Amendment rights.

The Supreme Court has repeatedly stated that public school students do not " 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.' " *Morse v. Frederick,* 551 U.S. 393, 397 (2007) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506 (1969)). However, the First Amendment rights of public school students " 'are not automatically co-extensive with the rights of adults in other settings' " and " 'must be applied in light of the special characteristics of the school environment.' " *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266 (1988) (quoting *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 682 (1986) and *Tinker,* 393 U.S. at 506). Thus, the Supreme Court has concluded that school administrators may: prohibit school expression that will "materially and substantially disrupt the work and discipline of the school," *Tinker,* 393 U.S. at 513; discipline students for vulgar or offensive speech, *Fraser,* 478 U.S. at 681, or speech that can be understood to promote illicit drug use, *Morse,* 551 U .S. at 409–10; and exercise editorial control over school-sponsored expressive activities such as school publications or productions as long as their actions are "reasonably related to legitimate pedagogical concerns," *Hazelwood,* 484 U.S. at 273. The Second Circuit has found "that a student may be disciplined for expressive conduct, even conduct occurring off school grounds, when this conduct 'would foreseeably create a risk of substantial disruption within the school environment,' at least when it was similarly foreseeable that the off-campus expression might also reach campus." *Doninger v. Niehoff,* 527 F.3d 41, 48 (quoting *Wisniewski v. Bd. of Educ. of Weedsport Cent. Sch. Dist.,* 494 F.3d 34, 38 (2d Cir.2007)).

**\*8** The Defendants urge this Court to apply the Supreme Court standard established in *Hazelwood School District v. Kuhlmeier,* where the Court held that a school may exercise editorial discretion over the contents of a school newspaper. 484 U.S. 260. Under the *Hazelwood* standard, educators may "exercis[e] editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." 484 U.S. at 273. The Court explained that such editorial controls "assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity and that the views of the individual speaker are not erroneously attributed to the school." *Id.* at 271.

The Plaintiffs suggest that the Court should instead apply the *Tinker* standard. [*See* Doc. 41 at 10 (citing *Tinker* standard); *but see id.* at 12 (referring to the reasonably related to pedagogical concerns standard).] Under *Tinker,* "student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.' " *Morse,* 551 U.S. at 403 (quoting *Tinker,* 393 U.S. at 513).

While Raphael wrote "Racing Time" in response to a school assignment, this case does not raise the same concerns as other school-sponsored speech cases such as *Hazelwood.* In this case, Raphael did not share his journal entry with any other students and had no intention of publishing or otherwise spreading his writing. Moreover, the evidence suggests that the students generally submitted their journals only to their teacher and did not share them in class or otherwise publish them. This case does not involve a risk that other students would be exposed to the violent themes of Raphael's writings or that Raphael's speech might be wrongly attributed to the school. Accordingly, while "Racing Time" may technically be "school-sponsored" speech in that it was submitted in response to a classroom assignment, for credit, the Court believes the more appropriate framework for evaluating the First Amendment issues in this case is that established by the Court in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503 (1969). *See Wisniewski,* 494 F.3d at 38 ("With respect to school officials' authority to discipline a student's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

expression reasonably understood as urging violent conduct, we think the appropriate First Amendment standard is the one set forth by the Supreme Court in *Tinker."* ); *Guiles ex rel. Guiles v. Marineau,* 461 F.3d 320, 326 (2d Cir.2006) (finding that the *Tinker* standard is generally applicable to student-speech cases and that the *Hazelwood* standard applies to "determining when a school may refuse to lend its name and resources to the dissemination of student expression") (quoting *Hazelwood,* 484 U .S. at 272–73).

**\*9** Ultimately, however, the question of which test to apply is immaterial because even under the more stringent *Tinker* standard, the Defendants' conduct does not amount to a violation of Raphael's First Amendment rights. [FN3] *"Tinker* held that student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.' " *Morse,* 551 U .S. at 403 (quoting *Tinker,* 292 U.S. at 513). "The question is not whether there has been actual disruption, but whether school officials 'might reasonably portend disruption' from the student expression at issue." *Doninger v. Niehoff,* 527, F.3d 41, 51 (2d Cir.2008) (quoting *LaVine v. Blaine Sch. Dist.,* 257 F.3d 981, 989 (9th Cir.2002) ). Moreover, it is not the role of the federal courts to second-guess school administrators' judgment. *DeFabio v. E. Hampton Union Free Sch. Dist.,* 658 F.Supp.2d 461, 480 (E.D.N.Y.2009) ; *see also Wood v. Strickland,* 420 U.S. 308, 326 (1975) . The Supreme Court has recognized that "[s]chool principals have a difficult job, and a vitally important one," and that school principals must often "decide to act—or not to act—on the spot." *Morse,* 551 U.S. at 409–10. "If the school's decision satisfies the *Tinker* standard, then it is irrelevant that a litigant or court believes that the situation could have been handled better." *DeFabio,* 658 F.Supp.2d at 480.

> FN3. The Court notes that, if it applies the *Hazelwood* standard, the Defendants' conduct similarly did not violate Raphael's First Amendment rights. The *Hazelwood* standard is "deferential," and holds that schools may regulate student speech "so long as the regulation reasonably relates to legitimate pedagogical concerns." *Guiles,* 461 F.3d at 327. Kolesar's in-school suspension of Raphael and subsequent call to CFS were reasonably related to the legitimate pedagogical concern of Raphael's and other students' safety. *See, e.g., S.G. ex rel. A.G. v. Sayreville Bd. of Educ.,* 333 F.3d 417, 423 (3d Cir.2003) (school's prohibition on speech threatening violence and the use of firearms reasonably related to legitimate pedagogical concerns).

The Second Circuit has held that a threat of violence, even if remote, satisfies the *Tinker* "substantial disruption" test. *See Wisniewski,* 494 F.3d at 38–39 (Student's transmission of icon depicting and calling for killing of his teacher "poses a reasonably foreseeable risk ... that it would 'materially and substantially disrupt the work and discipline of the school.' " (quoting *Morse,* 551 U.S. at 403)). In a case similar to this one, the Ninth Circuit held that the defendants had not violated the plaintiffs' First Amendment rights. *LaVine v. Blaine Sch. Dist.,* 257 F.3d 981, 989–92 (9th Cir.2002). In that case, James LaVine, an eleventh-grade student, wrote a poem with violent imagery, including shooting other students and himself. *Id.* at 983–84. Although not a school assignment, James showed the poem to his English teacher and asked for her feedback. *Id.* at 984. The teacher then showed the poem to the school counselor, who arranged a meeting with the teacher and the vice principal. *Id.* The vice principal contacted the police, who suggested that he contact Child Protective Services, which in turn recommended contacting the Community Mental Health Crisis Line. *Id.* at 985. A psychiatrist for the Crisis Line recommended that the police pick up James for evaluation. *Id.* After the police interviewed James and determined that he did not pose a danger to himself or others, the psychiatrist decided not to commit James. *Id.* Nonetheless, the vice principal shared the information concerning James with the school principal, who decided to "emergency expel" James pursuant to a Washington State law that allows for immediate expulsion where the school official has reason to believe that the student's presence poses an immediate and continuing danger to the student or other students. *Id.* at 985–86. The school district rescinded the expulsion after a psychiatrist evaluated James and determined it was safe for him to return to class; at that time James had missed seventeen days of school. *Id.* at 986.

**\*10** James and his father sued the school district, alleging violations of James's First Amendment rights. The Ninth Circuit held that, viewing the totality of the circumstances, including James's previous suicidal ideations that he had shared with school

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

officials, his past disciplinary problems, some of which involved violence, and, most important, the poem itself, the school district did not violate James's First Amendment rights by expelling him. *Id.* at 989. The court concluded that "these circumstances were sufficient to have led school authorities reasonably to forecast substantial disruption of or material interference with school activities—specifically, that James was intending to inflict injury upon himself or others." *Id.* at 990.

In this case, the Court similarly finds that the school officials could reasonably fear a substantial disruption or interference with school activities that justified Kolesar's actions. Raphael exhibited a patten of increasingly troubling behavior throughout the 2006–2007 school year: he brought prohibited items, including alcohol and fireworks to the school campus; he was involved in a fight with another student; he vandalized school property; he wrote the journal entry "Perfection," which referred to having an armed helicopter capable "send[ing] missiles that can destroy a whole town" [Doc. 33–32 at 9]; and, finally, he wrote "Racing Time," in which he described gathering his friends "violently or peacefully," using alcohol and illegal drugs, and, finally, committing suicide by shooting himself. [Doc. 33–34 at 9.] Even viewing the evidence in the light most favorable to the Plaintiffs and assuming that the assigned journal topic asked the students what they would do if they had only one day to live and further assuming that Kolesar received Joerger's evaluation on March 29, 2009, under the totality of the circumstances, the Court finds that the school officials were reasonable in their belief that Raphael might be disturbed and presented a risk of a substantial disturbance to the school. *See LaVine,* 257 F.3d at 990 ("Under *Tinker,* there is no requirement that the student be mentally ill and likely to cause serious harm. Indeed because of the special circumstances of the school environment, the level of disturbance required to justify official intervention is lower inside a public school than it is outside the school.").

The Court acknowledges that the poem at issue in *LaVine* contained more graphically violent content than "Racing Time" and specifically related to a school shooting. However, Principal Kolesar's response to Raphael's disruptive behavior and violently-themed writings was less drastic than the police intervention and emergency suspension at issue in *LaVine.* Given the circumstances, Principal Kolesar could reasonably anticipate that Raphael's conduct might create a material disruption to the school environment, and his decision to isolate Raphael for one day in school and to call CFS was a reasonable response and did not violate Raphael's First Amendment Rights. [FN4] *See Doninger,* 527 F.3d at 52 (describing that relationship between student speech at issue and particular form of action school officials took in response is relevant inquiry under *Tinker* analysis).

FN4. The Plaintiffs' primary argument in response to the Defendant's motion for summary judgment on their First Amendment claim is that Kolesar made a "false, bad faith report to [CFS]," and that "a knowingly false [CFS] report cannot be objectively viewed as 'reasonably related' to any legitimate concern for the student." [Doc. 41 at 11–12.] However, as described more fully below, *see Part III.B.2, infra,* reviewing the record before it, the Court finds that the Plaintiffs' allegation that Kolesar knowingly falsified his report in bad faith is without support in the evidence.

Moreover, the Plaintiffs' argument that their First Amendment claim should survive because the evidence suggests that Kolesar's actions were in retaliation for Cox's and Peng's speech are not well taken. [*See* Doc. 41 at 13–14.] In their Complaint, the Plaintiffs allege only that the Defendants violated *Raphael* 's free speech rights. [Doc. 1 at ¶ 86.] The Plaintiffs cannot now constructively amend their Complaint to include a claim of retaliation for Peng's and Cox's speech in their response to the motion for summary judgment.

**\*11** Taken together, the school's actions leading up to the events of April 20, 2007 support the Defendants' claim that in making the CFS report, the school was not trying to discipline Raphael for his speech, but was instead acting out concern for the well-being of Raphael and other middle school students. *See LaVine,* 257 F.3d at 991. As early as January 2007, Kolesar had decided to adopt a therapeutic rather than a disciplinary approach to Raphael's behavioral problems. [Doc. 33–6 at 6.] Principal Kolesar and other school officials repeatedly expressed their concern for Raphael's mental health to the Plaintiffs and requested that they consent to a psychiatric evaluation of Raphael. While, "in retrospect, it may appear that ... the school overreacted," courts review "with deference[ ] schools' decisions in connection with the safety of their students even when freedom of expression is

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

involved." *LaVine,* 257 F.3d at 991–92. Considering all of the relevant facts and the totality of the circumstances, the Court finds that Kolesar's CFS report and in-school suspension of Raphael were reasonable and did not violate the First Amendment. Accordingly, the Court **GRANTS** summary judgment in favor of the Defendants on this claim.

2. Fourteenth Amendment Substantive Due Process Claims

The Defendants also move for summary judgment on the Plaintiffs' Fourteenth Amendment Claims. The Plaintiffs plead two separate, but related, substantive due process claims in their Complaint. First, the Plaintiffs allege that, by "falsely reporting that plaintiffs were providing minimal care for and neglecting their child," Defendant Kolesar "violated the privacy rights of the plaintiffs and interfered with their right to raise their child in violation of the due process clause of the Fourteenth Amendment." [Doc. 1 at ¶ 87.] Second, the Plaintiffs allege that Kolesar violated their substantive due process rights "[b]y recklessly making false accusations in his report to [CFS]" because his conduct "was arbitrary, capricious, and shocking to the conscious." [*Id.* at ¶ 88.]

The Plaintiffs' first due process claim is one for a violation of their right to intimate association, which encompasses any right to be free from false reports of child abuse or neglect. *See Oglesby v. Eiksyta,* 2007 WL 1879723, at * 10– * 12 (N.D.N.Y. June 28, 2007). [*See* Doc. 41 at 14–15.] FN5 The Second Circuit has recognized that "family members have, 'in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state.' " *Anthony v. City of New York,* 339 F.3d 129, 143 (2d Cir.2003) (quoting *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999)). In order to prevail on such a claim a plaintiff "must demonstrate that [the alleged offending act] was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.' " *Id.*

> FN5. The Defendants characterize this claim as one for a "stigma-plus" injury. [Doc. 33 at 22.] The Defendants argue that this claim fails because the Plaintiffs have no alleged to have suffered a stigma and because they have shown no recognizable material burden or alteration of Plaintiffs' status or rights as parents. The Plaintiffs do not refer to a "stigma-plus" claim in their Complaint and do not respond to the Defendants' argument on this point in their response to the Defendants' motion for summary judgment. [*See* Doc. 41 at 14–16.] Accordingly, the Court finds that, even assuming that the Plaintiffs alleged a "stigma plus" claim in their Complaint, they have now abandoned any such claim.

**\*12** The Plaintiffs' second due process claim is for a violation of their "right to be free from 'government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense.' " [Doc. 41 at 15 (quoting *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)).] Both Fourteenth Amendment claims therefore require a showing that the Defendants' conduct was "shocking" and "arbitrary" in a constitutional sense. Attempting to meet this burden, the Plaintiffs argue that Kolesar's CFS report was "deliberately false" and that it therefore satisfies this standard, even though the Plaintiffs never lost physical custody of Raphael.

The Second Circuit has held that a substantive due process right to familial association is violated only where the court concludes that the child's separation from his or her parents under the circumstances of the case "would have been prohibited by the Constitution even had the [plaintiffs] been given all the *procedural* protections to which they were entitled." *Tenenbaum,* 193 F.3d at 600) (emphasis in original) (holding that removal of child from school to hospital for medical exam, without parents' consent, to investigate allegations of child abuse that were ultimately determined unfounded, did not violate plaintiffs' substantive due process rights). "[B]rief removals generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation ...." *Nicholson v. Scoppetta,* 344 F.3d 154, 172 (2d Cir.2003); *see also Anthony,* 339 F.3d at 143 (holding that temporary separation of woman with Down Syndrome from her sister due to her involuntary confinement did not violate substantive due process rights of familial association).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

However, in *Oglesby v. Eikszta,* the court denied the defendants' motion to dismiss a similar familial association claim arising out of the defendants' filing an allegedly false report with Child Protective Services, even though the parents there did not allege a loss of custody. 2007 WL 1879723, at *12 (N.D.N.Y. June 28, 2007). The Oglesby court acknowledged that in allowing the Plaintiffs' familial association claims to go forward, it was entering "unchartered territory," that its own research did not reveal "a single case where relief was awarded for violation of the right of intimate association without a loss of custody," and that in *Anthony* and *Tenenbaum,* the Second Circuit held that "loss of custody for short periods of time does *not* rise to the level of egregiousness necessary for a substantive due process violation, where the purpose of the separation was to ensure the physical well-being of the detained individual, which is a legitimate governmental objective." *Id.* at * 11–* 12 (emphasis in original). Nonetheless, it allowed the plaintiffs' claims to go forward because the "plaintiffs allege[d] that the offending act was a malicious and false report of child abuse, which set in motion a series of events that wreaked psychological havoc on their family." *Id.* at * 12. Accepting the allegations in the plaintiffs' complaint as true, the court found it was "possible ... that defendants' actions could be considered so shocking arbitrary and egregious as to render them a violation of plaintiffs' substantive due process rights" and concluded that at that procedural stage, it would be improper to grant the defendants' motion to dismiss for failure to state a claim. *Id. See also Wilkinson v. Russel,* 182 F.3d 89, 104 (2d Cir.1999) (suggesting that deliberately falsifying evidence to substantiate claim of abuse could amount to violation of parents' constitutional rights to familial association).

**\*13** As it may be true that the Plaintiffs here have pleaded facts which, if proved, would establish a violation of the Plaintiffs' substantive due process rights. However, this case is no longer at the pleading stage and the Plaintiffs cannot rest on allegations of malicious and deliberately false reports, but rather must present evidence in support of these allegations, to survive the Defendants' summary judgment motion. *See Cuff v. Valley Cent. Sch. Dist.,* 342 F. App'x 692, 693 (2d Cir.2009) (denying motion to dismiss First Amendment claim and emphasizing different standard that applies on summary judgment). The Plaintiffs have failed to present evidence to support their claim that Kolesar's report contained information that was "not merely wrong [but] deliberately false" [Doc. 41 at 15], and the Court finds that no genuine issue of material fact exists with respect to this allegation. The Plaintiffs claim that two of Kolesar's statements—that Raphael "has been repeatedly writing in his journal violent homicidal and suicidal imagery while in school," and that "the school recommended to the parents that they seek a psychiatric evaluation for their son but they have refused to do so"—support their allegation that Kolesar's report was deliberately false. The Court disagrees.

First, the language the Plaintiffs quote comes from a "call narrative" contained in the CFS "intake report." [*See* Doc. 37–1 at 6.] Kolesar did not write this document; it was prepared by the CFS worker who fielded the call. The "call narrative" provided in full:

Narrative: 13 yr old Rafael has been repeatedly writing in his journal violent homicidal and suicidal imagery while in school. He has also participated in acts of vandalism and brought dangerous objects into school such as fireworks and pieces of metal. Rafael recently expressed suicidal thoughts and had a very descriptive plan for doing it in that he would take his favorite weapon, a ruger place it in his mouth with a cyanide pill and shoot himself and everyone would party for a week. The school recommended to the parents that they seek a psychiatric evaluation for their son but they have refused to do so. The parents are minimizing the child's thoughts and behaviors and state that this is just fiction and all a misunderstanding it is believed the child is a danger to himself and other's [sic] at this point. The parents are failing to provide a minimal degree of care to their son.

[Doc. 37–1 at 6.] [FN6] Second, even assuming these statements are attributable to Kolesar, they are not *materially* false. While it is true that none of Raphael's writings included "homicidal" imagery, both "Perfection" and "Racing Time" referenced potential violence against others. [*See* Doc. 33–32 at 9; Doc. 33–34 at 9.] Moreover, the fact that Raphael used "suicidal" imagery only once, and not "repeatedly" does not make the report materially false. Finally, the statement regarding the school district's recommendation that Raphael undergo a psychiatric evaluation and his parents' refusal is entirely accurate. [*See* Doc. 33–25 (letter from Principal Kolesar requesting Plaintiffs to consent to psychiatric evaluation); Doc. 37–5 at 4 (Cox Dep. at 31) (stating that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

Defendant Girardi recommended Raphael undergo psychiatric evaluation); *id.* at 2 (Cox. Dep. at 28) (confirming that Plaintiff Peng was "insistent" that Raphael not see a psychiatrist).] Moreover, as described above, the evidence supports Principal Kolesar's assertion that he contacted CFS because he was concerned about Raphael's well-being and because he perceived that the Plaintiffs were not taking the situation seriously.

> FN6. Kolesar's written narrative stating his reasons for suspicion, provided in full: "Student has demonstrated the following: repeated violent & suicidal imagery in writings, vandalism to school, possession of alcohol, fireworks, dangerous objects. School rec: psychiatric evaluation—parents refused." [Doc. 37–1 at 5.]

**\*14** Viewing the evidence as a whole, the Court concludes that the Plaintiffs have failed to create a material issue of fact as to Kolesar's deliberately making a false CFS report. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252 (1986). Accordingly, the Court holds that no reasonable jury could conclude that Kolesar in bad faith made a deliberately false report to CFS.

As the Plaintiffs admit in their opposition brief, they "have a substantive due process right to be free from 'government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against action that is incorrect or ill-advised.' " [Doc. 41 at 15 (quoting *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)).] The Court finds that, as a matter of law, the Defendants' conduct was not so egregious, arbitrary, or shocking to the conscious to constitute a violation of the Plaintiffs' Fourteenth Amendment substantive due process rights. Accordingly, the Court **GRANTS** summary judgment in favor of the Defendants on this claim.

### 3. Qualified Immunity

Even if Principal Kolesar's actions did violate Raphael's constitutional rights, he is nonetheless entitled to summary judgment because he is protected by qualified immunity as a matter of law. Qualified immunity attaches when the conduct of a government actor "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 432–33 (2d Cir.2009) (citation omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (citation omitted).

With respect to the Plaintiffs' First Amendment claim, "[a]lthough there is no question that the *Tinker* rule is clearly established, the application of that test to the particular circumstances here leaves room for school officials, at a minimum, to reasonably disagree" as to whether Raphael's behavior coupled with his journal entries created a risk of substantial disruption. *DeFabio,* 658 F.Supp.2d at 483. *See also Acevedo v. Sklarz,* 553 F.Supp.2d. 164, 170 (D.Conn.2008) ("The clearly established right is that students may not be punished or stopped from engaging in *non-disruptive* speech. Where that expression may be fairly characterized as "disruptive," however, it crosses into a constitutional gray area in which school officials are reasonable in their belief that they are acting lawfully to put a stop to the disruptive student behavior.") (emphasis in original). In this case, it is not clearly established that a CFS call constitutes an adverse action. Moreover, Principal Kolesar could have reasonably believed that Raphael's behavior and speech created a risk of substantial disruption to the school and thus that his response did not violate Raphael's First Amendment Rights. *See DeFabio,* 658 F.Supp.2d at 483–84. Accordingly, Kolesar is entitled to qualified immunity on the Plaintiffs' First Amendment claim.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 6501655 (S.D.N.Y.)

(Cite as: 2010 WL 6501655 (S.D.N.Y.))

**\*15** With regard to the Plaintiffs' Fourteenth Amendment claims, it is not clearly established that even a false report of child abuse can constitute a substantive due process violation if the parent does not lose custody of the child. *See Oglesby* 2007 WL 1879723, at \*11 (stating that the court's research did not reveal "a single case where relief was awarded for violation of the right of intimate association without a loss of custody"). Thus, Kolesar is also entitled to qualified immunity on the Plaintiffs' Fourteenth Amendment claims.

Therefore, even assuming that there was an underlying violation of the Plaintiffs' First or Fourteenth Amendment rights, Principal Kolesar is nonetheless entitled to summary judgment on the basis of qualified immunity. [FN7]

> FN7. Similarly, the School District is entitled to summary judgment because of the absence of any evidence of a policy or custom that would form the basis of liability against a municipal entity under *Monell v. Department of Social Services,* 436. U.S. 658 (1978). *See DeFabio,* 658 F.Supp.2d at 484 n. 8; *see also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735–36 (1989) ("[T]o prevail on [a] claim for damages against the school district, [plaintiff] must show that the violation of his [constitutional rights] was caused by a custom of policy within the meaning of *Monell* and subsequent cases."). While neither party addresses this issue, the Plaintiffs do not present evidence of a District Policy or Custom in favor of retaliatory notification to CFS, and the evidence in the record does not suggest that such a policy or custom existed. *Compare Oglesby,* 2007 WL 1879723 at \*13.]

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for summary judgment with respect to all of the Plaintiffs' claims.

IT IS SO ORDERED.

S.D.N.Y.,2010.

Cox v. Warwick Valley Cent. School Dist.
Slip Copy, 2010 WL 6501655 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Sandra J. OGLESBY and Donald Oglesby, Plaintiffs,
v.
Holly EIKSZTA, individually; Lisa Wiles, individually;
Nancy Sharoff, individually; Victoria Leland,
individually; Theresa Sheely, individually; Sherry
Sharpe, individually; Tashia Brown, individually; and
the Ellenville Central School District, New York,
Defendants.
No. 1:07-CV-00051 (NPM-RFT).

June 28, 2007.

Jonathan Lovett, of Counsel, Lovett & Gould, LLP, White
Plains, NY, for Plaintiffs.

Rhett D. Weires, of Counsel, Tarshis, Catania, Liberth,
Mahon & Milligram, PLLC, Newburgh, NY, for
Defendants.

### MEMORANDUM-DECISION and ORDER

NEAL P. McCURN, Senior District Judge.
### I. Introduction
*1 The plaintiffs in this case are Sandra J. and Donald
Oglesby, the adoptive parents of twin girls, IG and NR
("the twins"), and biological parents of a son, ID. The
Oglesbys seek relief from the defendants in this case-the
Ellenville Central School District ("the School District")
and several of its employees in their individual capacities
("the individual defendants")-for injuries allegedly
suffered as a result of defendants' alleged malicious and
false report of child abuse against plaintiffs to the Child
Protective Service ("CPS") in Kingston, New York.
Presently before the court are two motions to dismiss all
pending causes of action for failure to state claims upon
which relief may be granted pursuant to Fed.R.Civ.P.
12(b)(6).[FN1] Plaintiffs oppose, and defendants reply. The
court heard oral argument regarding both motions on June

6, 2007 in Albany, New York, and thereafter reserved
decision.

> FN1. Subsequent to the filing of the initial
> motion to dismiss, plaintiffs amended their
> complaint, adding two defendants and replacing
> a state defamation claim with a federal civil
> rights claim. Defendants filed a second motion to
> dismiss in order to address the additional
> defendants and civil rights claim.

### II. Procedural Background

Plaintiffs' initial complaint set forth one civil rights
claim pursuant to 42 U.S.C. § 1983 ("section 1983"),
which was predicated on a claim for violation of their right
to intimate association as guaranteed by the Fourteenth
Amendment to the United States Constitution. See Compl.
¶¶ 37-38, Dkt. No. 1. In addition, the initial complaint set
forth a claim for the New York common law tort of per se
defamation. See id. ¶¶ 39-40. Defendants promptly filed a
Rule 12(b)(6) motion to dismiss the entire complaint. On
the same day plaintiffs filed their opposition papers
regarding the motion, they also filed an amended
complaint,[FN2] which added two School District employees
as defendants and eliminated the per se defamation
claim.[FN3] Plaintiffs' amended complaint sets forth two
section 1983 claims: Count I is predicated on a claim for
violation of their right to intimate association, as
guaranteed by the First and Fourteenth Amendments to the
United States Constitution, and Count II is predicated on
a claim for retaliation in violation of their First
Amendment rights. See Am. Compl. ¶¶ 41-44, Dkt. No.
16. In their reply papers regarding the first motion as well
as their papers in support of their second motion to
dismiss, defendants make clear their intent to move for
dismissal of both section 1983 causes of action.

> FN2. A motion to dismiss is not a responsive
> pleading for Rule 15 purposes. See Fed.R.Civ.P.
> 15(a); Barbara v. New York Stock Exch., Inc., 99
> F.3d 49, 56 (2d Cir.1996). Therefore, because
> defendants have not yet filed an answer,
> plaintiffs amended their complaint as of right in
> accordance with Rule 15.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

FN3. In their reply papers, defendants request that the court attach prejudice to the withdrawal of the *per se* defamation claim, because "[c]learly, [plaintiffs'] decision to withdraw [said] claim, rather than oppose [the pending motion to dismiss], reveals the suspect nature of the claim ...." Defs' Reply Mem. of Law at 4, Dkt. No. 20. In support of their argument, defendants cite *Manbeck v. Katonah-Lewisboro School District,* 435 F.Supp.2d 273 (S.D.N.Y.2006) wherein the court there noted that where the defendants had not filed an answer, plaintiff was allowed to amend her complaint *subject to* the pending motion to dismiss. *See id.* at 275. However, unlike here where plaintiffs withdraw one of their originally pled causes of action, in *Manbeck,* the plaintiff amended her complaint to expand the defined class of plaintiffs and to allege an additional cause of action. *See id.* There is nothing in *Manbeck* to suggest that a claim, once pleaded, but then properly withdrawn, remains before the court for a decision whether to dismiss said claim with prejudice. Moreover, the rationale for defendants' request is specious, and the court is loath to speculate as to plaintiffs' reasons for withdrawing their defamation claim. As such, the court declines defendants' request to attach prejudice to the withdrawal of said claim.

### III. Factual Background

For purposes of deciding the present motion, the court will, as it must, accept the allegations of fact in plaintiffs' amended complaint as true, drawing all reasonable inferences in their favor. *See Iqbal v. Hasty,* ---F.3d ----, 2007 WL 1717803, at *5 (2d Cir. June 14, 2007).

In July 2002, plaintiffs adopted twin girls, IG and NR, whom were then four years old. At that time, their biological son, ID, was six. The twins' two older biological brothers initially resided with plaintiffs in a pre-adoptive capacity. Subsequent to their adoption of the twins, plaintiffs learned of the children's history of physical and sexual abuse by their biological parents, among others. One of the results of the abuse was that the children would routinely engage in sex acts with one another. ID was inadvertently an observer on one such occasion and was also subjected to conduct of a sexual nature by IG. Eventually, after intensive psychiatric and medical intervention, the plaintiffs determined that the twins' biological brothers could not remain in their home due to the brothers' sexually predatory behavior toward the twins.

*2 With intervention, the twins' psychological and medical conditions improved, and eventually they were enrolled in an elementary school in the School District. All of the information regarding the twins' history and the circumstances surrounding their brothers' removal from plaintiffs' home, was communicated to the following individually named defendants: Holly Eikszta ("Eikszta"), principal of the elementary school where the twins are enrolled; Lisa Wiles ("Wiles"), superintendent of the School District; Nancy Sharoff ("Sharoff"), ID's former teacher; Victoria Leland ("Leland"), school nurse at the elementary school where the twins are enrolled; Theresa Sheely ("Sheely"), school psychologist at the elementary school where the twins are enrolled; Sherry Sharpe ("Sharpe"), Committee on Special Education ("CSE") chairperson; and Tashia Brown ("Brown"), assistant principal and chairperson of the "504 Committee".

In kindergarten, IG was mistreated by her teacher and guidance counselor, and thereafter her behavior regressed. As a result, plaintiffs intervened by addressing their concerns about IG's mistreatment to Eikszta and IG's then teacher. During first grade, IG acted inappropriately at times, but within normal limits, and developed into an "A" student. However, the following school year, which commenced in the fall of 2005, IG's condition deteriorated, and she eventually was hospitalized. During her almost one-month hospitalization, the School District, through Wiles, failed to provide IG with a tutor for all but one week.

One of the behaviors exhibited by IG which led to her hospitalization was self mutilation through masturbation with sharp objects. When IG returned to school in January 2006, plaintiffs notified Leland (school nurse) and Sheely (school psychologist) of the circumstances surrounding IG's hospitalization, and that IG required close supervision at school, especially in the bathroom. Sheely, however,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

refused to provide monitoring and/or supervision for IG, as a result of which IG self mutilated and compulsively masturbated on a daily basis by using a long, metal spigot attached to the toilet in the nurse's bathroom. Sheely further refused to provide psychological counseling for IG, despite receipt of the hospital discharge documentation and her participation in several meeting with plaintiffs, during which she was cautioned regarding IG's recent behaviors.

Plaintiffs met with Wiles (superintendent) in April 2006 to advise her of, among other things, the danger posed to IG as a result of the spigot and Leland's refusal to monitor IG while in the bathroom. A few days after this meeting, plaintiffs sent a letter to Sharoff (ID's teacher) on an unrelated matter regarding ID, wherein they challenged her abusive treatment of students. Plaintiffs again communicated with Wiles a second time that week, along with, among others, Eikszta (school principal), demanding a safe environment for IG at school.

**3** Later in April 2006, after plaintiffs made the aforementioned complaints, Defendants called CPS and filed the following false complaint against plaintiffs in accordance with the School District's retaliatory policy [FN4]:

FN4. Plaintiffs contend that the School District, "acting by and through each of the individually named Defendants has over the years developed a policy and/or practice of retaliating against parents whom express concerns to the District regarding incompetent or abusive staff members and conditions adversely affecting the health and safety of students including those with disabilities that have special educational needs. In that connection the retaliatory mechanism of choice of these individuals is the making of calculatedly false complaints of child abuse against the offending parents to the Child Protective Services Unit of the New York State Office of Children and Family Services." Am. Compl. ¶ 11.

There is concern for the emotional welfare of both I[G] and N[R]. The adoptive parents are preoccupied with discussing sexual issues of the two children with anyone who will listen. They discuss how the children were horribly sexually abused while in their biological parent's care in Texas and in foster care. The Oglesby[ ]s had adopted four children from the biological family, but have systematically rid themselves of two children and are now working on the last two, that being I[G] and N[R]. The Oglesby[ ]s discuss how the girls masturbate and the inappropriate style and settings of one versus the other. They discuss the items the girls masturbate on including water spigots and sinks. They have examined the girls themselves and claim that one of the twin's vaginas is very red inside. The parents claim that the girls are sitting on special rugs and pillows and excessively masturbating. They have requested that the [school nurse] supervise the sexual acting out of the children closer. It is believed that the parents might have installed special cameras to actually monitor the girls['] behaviors. It is unknown if the parents are doing this for sexual gratification, but Munchausen[']s cannot be ruled out.

Am. Compl. ¶ 26. The very next day, IG was interviewed at school by a CPS investigator and a member of the New York State Police, in the presence of defendant Sheely, the school psychologist. IG was removed from her classroom just prior to her lunch period, and was taken to the guidance counselor's office where the interview took place. As a result, IG became terrified and experienced bed wetting, self mutilation, and flashbacks. IG further became sad, distant, tearful, compulsive and, among other things, unfocused.

Also on the day following the CPS complaint, ID was interviewed at school by a CPS investigator and a member of the New York State Police. ID was brought to the principal's office where the interview took place. Like his sister, ID became terrified as a result of the interview, and felt a pervading sense of danger associated with his fear that he might be taken away by the police.

NR was absent from school on April 25, 2007, but she, too, was later interviewed at the CPS office in Kingston, New York. As a result of the interview, NR became terrified and experienced chanting, rocking and clinging behaviors. NR also regressed to the behavior of a two-year-old, and became withdrawn, unfocused, and hysterical at the prospect of returning to school.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

Later in the afternoon of April 25th, Donald Oglesby was contacted by a CPS investigator, and an interview was scheduled for the Oglesbys at the CPS office in Kingston the following day. During their separate interviews, the Oglesbys were informed of the complaints made against them. As of result of the complaint and subsequent CPS investigation the Oglesbys experienced unrelenting fear, anger, exhaustion, inability to eat, humiliation, nausea, crying, and inability to function. The Oglesbys suffered depression, began taking prescription sleep medications, and among other things, experienced a loss of the joy of parenting.

**\*4** Subsequently, CPS notified plaintiffs that the complaint against them was unfounded, and therefore, the investigation was closed. On September 11, 2006 plaintiffs filed a Notice of Claim with the School district alleging a violation of their rights under, *inter alia,* New York common law due to their filing a false complaint with CPS. As a result, defendants retaliated against plaintiffs by (1) subjecting IG to a traumatizing Occupational Therapy evaluation, which was improperly conducted outside the presence of plaintiffs, (2) demanding plaintiffs consent to a medical/psychiatric evaluation, ostensibly of IG, by a physician selected by the School District, despite the available hospital records from IG's then recent inpatient stay, (3) forcing plaintiffs to defend themselves at a hearing regarding defendants' attempt to gain an order compelling said examination, (4) refusing to schedule a meeting of the Committee in Special Education (CSE) regarding IG, (5) refusing to obtain IG's medical and psychiatric records, despite their possession of a release of information authorization from plaintiffs, (6) refusing to conduct a CSE team evaluation of IG in order to classify her as emotionally disturbed, and (7) denying IG a free appropriate public education despite her self evident disability. *See* Am. Compl. ¶ 39.

### IV. Discussion

### A. Rule 12(b)(6) *Motion to Dismiss*

As previously mentioned, when deciding a Rule 12(b)(6) motion to dismiss, the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in plaintiffs' favor. *See supra,* at 2-3.

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974 (2007).[FN5] The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower court apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible* [,]" but does not require a heightened pleading standard for civil rights claims. *Iqbal,* --- F.3d at ----, 2007 WL 1717803 at \*11 (emphasis in original).

> FN5. By its opinion in *Bell Atlantic,* the Supreme Court recently abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968 (2007) (*quoting Conley,* 355 U.S. 41, 45-46, 78 S.Ct.99 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.,* at 1969.

In support of their motion to dismiss, defendants argue that (1) plaintiffs have failed to identify with particularity the individuals who made the alleged false report to CPS, (2) as mandated reporters under section 419 of New York Social Services Law, defendants are immune from suit, and (3) in any event, defendants are not "state actors" as defined by section 1983.

In opposition to defendants' motion, plaintiffs argue that (1) their complaint is valid even without identification of the person or persons who filed the CPS report; (2) because they have alleged that defendants acted maliciously when making the CPS complaint, with knowledge of its falsity, they have established bad faith on the part of defendants and thus, section 419 immunity does not apply; and (3) defendants here, as employees of a public school district, which is a municipal arm of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

state, are "state actors" pursuant to section 1983.

**\*5** In their reply papers regarding the first motion and in their papers in support of the second motion to dismiss, defendants argue that plaintiffs' intimate association claim must be dismissed because plaintiffs fail to allege loss of custody. In addition, defendants argue plaintiffs' First Amendment retaliation claim is not ripe for review as they have failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1490 ("IDEA").

The court will address the parties' arguments *seriatim.*

### 1. Immunity

Defendants argue in the first instance that they enjoy statutory immunity from suit related to any alleged report of child abuse or maltreatment. As such, a brief discussion of the framework of the New York Social Services Law as relevant to this case is warranted. An affirmative obligation exists to report child abuse for, among others, school officials and medical professionals. N.Y. SOC. SERV. LAW §§ 413(1), 416 (McKinney 2006). Such persons are referred to as "mandated reporters." *DeLeon v. Putnam Valley Bd. of Educ.,* 228 F.R.D. 213, 216 (S.D.N.Y.2005). A mandated reporter who is an employee of a school or other relevant facility is further required to notify the person in charge of the school or facility when a report shall be made, at which time said person in charge will also become responsible to report the suspected abuse. *See* N.Y. SOC. SERV. LAW § 413(1). Persons who report suspected child abuse "shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions." N.Y. SOC. SERV. LAW § 419 ("section 419"). Said immunity shall apply, so long as the person "act[s] within the scope of their employment and do[es] not engage in willful misconduct or gross negligence." *Lentini v. Page,* 5 A.D.3d 914, 915, 773 N.Y.S.2d 472, 473 (N.Y.App. Div. 3rd Dep't 2004) (internal citation omitted). Actual or conclusive proof of child abuse or maltreatment is not necessary for immunity to attach, only "reasonable cause to suspect" same and the good faith of the person making the report in the discharge of their obligations and duties imposed by the statute. *Id.* at 915, 773 N.Y.S.2d at 474 (internal citation omitted). A

presumption of good faith exists where a mandatory reporter was "discharging [her] duties and acting within the scope of [her] employment without gross negligence or willful misconduct." *Id.* However, a plaintiff may overcome this presumption by demonstrating persuasive evidence of bad faith. *See J.C. v. Mark Country Day School,* 03-CV-1414, 2007 WL 201163, at \*6 (E.D.N.Y. Jan. 23, 2007).

Here, plaintiffs contend that defendants maliciously filed a false report of child abuse against them in retaliation for recent complaints by plaintiffs against certain school officials. At this stage, on a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiffs' allegations of fact as true. Plaintiffs have alleged that the defendant school employees were made aware of the details included in the report to CPS, and that just prior to the report, plaintiffs complained to the School District about certain issues relating to their children. *See* Am. Compl. ¶¶ 13-15. Plaintiffs cite case law from the New York State Supreme Court, Appellate Division, Second Department, albeit in the context of a claim for defamation, wherein motions to dismiss and for summary judgment were appropriately denied where plaintiff alleged and proved facts, respectively, which established that defendants acted with malice. *See Hachmann v. County of Nassau,* 29 A.D.3d 952, 818 N.Y.S.2d 102 (N.Y.App. Div. 2nd Dep't 2006); *Zornberg v. North Shore Univ. Hosp.,* 29 A.D.3d 986, 815 N.Y.S.2d 719 (N.Y.App. Div. 2nd Dep't 2006). Here, as in *Zornberg,* plaintiffs have pleaded facts which, if proved, would establish bad faith. As such, because the court can not determine at this time whether defendants enjoy immunity under section 419, plaintiffs will be allowed to move forward and conduct discovery in order to attempt to prove their allegations of bad faith. *See Langner v. Brown,* 913 F.Supp. 260, 269 (S.D.N.Y.1996) (quoting *Lessler v. Little,* 857 F.2d 866 (1st Cir.1988) ("[a] plaintiff 'is entitled to his day in court to prove exactly that ...' " which he properly alleges in his complaint)).

### 2. Identity of Reporter

**\*6** Defendants next argue that because plaintiffs do not actually know the identity of the reporter, and therefore have not identified the reporter in their amended complaint, plaintiffs are unable to state any claims against

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

defendants.

Reports of child abuse or neglect are kept confidential, and are only made available to, among others, "any person who is the subject of the report or other persons named in the report[.]" N.Y. SOC. SERV. LAW § 422(4)(A)(d) (McKinney 2006). While the subject of the report is entitled to know its contents, he or she is not entitled to know the identity of the person who made the report. *See DeLeon,* 228 F.R.D. at 216 (citing N.Y. SOC. SERV. LAW § 422(4)(A) ("Nothing in this section shall be construed to permit any release, disclosure or identification of the names or identifying descriptions of persons who have reported suspected child abuse or maltreatment ....")). However, "a court, upon a finding that the information in the record is necessary for the determination of an issue before the court [,]" is entitled to the contents of the report, as well as the identity of the person who made the report. N.Y. SOC. SERV. LAW § 422(4)(A)(e). The New York State Commissioner of Social Services ("the Commissioner") is authorized by statute "to prohibit the release of data that would identify the person who made the report ..., or the agency, institution, organization, program or other entity where such person is employed ..., which he reasonably finds will be detrimental to the safety or interests of such person." N.Y. SOC. SERV. LAW § 422(7).

Defendants argue that a mere allegation of bad faith does not allow plaintiffs to learn the identity of the reporter or reporters pursuant to the terms of section 422, and therefore they are unable to state a claim against defendants. Defendants further argue that plaintiffs' failure to identify the reporter with particularity in their complaint, violates what they contend is a heightened pleading standard for all section 1983 claims. *See* Defs. Mem. of Law at 6-7, Dkt. No. 11, *citing Ciambriello v. County of Nassau,* 292 F.3d 307 (2d Cir.2002). Defendants, however, neglect to inform the court that while the Court of Appeals for the Second Circuit held in *Ciambriello* that a heightened pleading standard exists for claims of conspiracy under 42 U.S.C. section 1985, *see Ciambriello,* 292 F.3d at 324-25, it has likewise noted, in accordance with the Supreme Court, that all other civil rights claims are evaluated pursuant to the liberal notice pleading standard of Fed.R.Civ.P. 8(a), *see Phelps v. Kapnolas,* 308 F.3d 180, (2d Cir.2002) (citing

*Swiarkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992 (2002)). Defendants' failure to identify the obvious distinction between the facts of their cited case and the present case is troubling. In any event, for the reasons that follow, the court finds that plaintiffs' amended complaint may not be dismissed for failure to state a claim due solely to plaintiffs' failure to identify the reporter or reporters with particularity.

*7 Citing *DeLeon v. Putnam Valley Board of Education,* 228 F.R.D. 213, 216 (S.D.N.Y.2005), defendants argue that plaintiffs here are merely on a "fishing expedition" and should not be found to have stated a claim where they cannot identify a defendant. The court in *DeLeon,* having concluded that the interests in non-disclosure of the identity of a mandated reporter outweighed the interests in disclosure, found:

> "At a minimum, before breaching the privacy provided to mandated reporters by statute, a plaintiff ought to be able to offer some evidence of bad faith independent of the identity of the mandated reporter. If a plaintiff needs to learn the reporter's identity in order to make a case, then the complaint alleging discrimination was filed without foundation, in a fishing expedition to acquire ammunition not otherwise available to a litigant."

*DeLeon,* 228 F.R.D. at 220. In *DeLeon,* the plaintiff contended that the report of child abuse was based on racial discrimination. Unlike here, in *DeLeon,* the child who was the subject of the report revealed by deposition testimony that her parents hit her on the buttocks, thighs and back, and that when they did so with a belt, it would leave welts or bumps. *See id.* The court therefore found that a "substantial factual basis for the reporter's suspicion" existed. *Id.* No such substantial basis exists on the facts alleged here, however. Here, there are no allegations of fact in the amended complaint which would support a "substantial factual basis" for suspicion of abuse by plaintiffs. Moreover, plaintiffs have alleged facts which would support a conclusion of bad faith against defendants. Plaintiffs allege that defendants filed a false report against them to CPS and did so maliciously and in retaliation for plaintiffs' recent complaints against school officials. Plaintiffs also contend that because the defendants were the only persons with knowledge of

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

certain facts disclosed in the report, one or more of them is the person who filed the false report. At this stage, the court must accept these allegations of fact as true, and draw all reasonable inferences in favor of plaintiffs, and therefore, here, unlike *DeLeon,* some showing of bad faith exists. Also, unlike *DeLeon* it is not at all clear that the plaintiffs here must learn the reporter's identity in order to survive a motion to dismiss. Plaintiffs here have sufficiently narrowed their allegations, which if proved true after an opportunity for discovery, would establish that the report was made in bad faith. In any event, whether this court should order the release of identifying information is a question to be resolved during discovery, not when deciding a Rule 12(b)(6) motion to dismiss. *See DeLeon,* 228 F.R.D. at 217-221 (balancing interests of disclosure verses non-disclosure of identity of reporter on appeal from a magistrate's order regarding a motion to compel). Therefore, plaintiffs' amended complaint may not be dismissed at this time for failure to state a claim due solely to plaintiffs' failure to identify the reporter or reporters with particularity.

**3. State Action**

    **\*8** Defendants also advance the argument that they are not "state actors" within the intendment of section 1983, and therefore, plaintiffs' complaint, comprised solely of two section 1983 claims, must be dismissed. Plaintiffs contend that, as employees of a municipal arm of the state, defendants are, in fact, "state actors."

    In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) "some person has deprived him of a federal right," and (2) "the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005), (*quoting Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920 (1980)). Traditionally, the definition of acting under color of state law requires that the section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996) (*quoting West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (internal quotation and citation omitted)). Therefore, when a defendant abuses the position given to him by the state, he is deemed to have acted under color of state law. *Id.,*

(*citing West,* 487 U.S. at 49-50, 108 S.Ct. at 2255-56).

    Here, plaintiffs contend that defendants violated their right of intimate association in violation of the First and Fourteenth Amendments when they maliciously made a false report of child abuse to CPS, and that they did so in retaliation for speech protected by the First Amendment. The defendant employees of the School District argue, however, that they are not "state actors" pursuant to section 1983. In support of their argument, Defendants cite, among others, a case from the Eastern District of New York, *J.C. v. Mark Country Day School,* wherein the court held that a defendant teacher who reported suspected child abuse to a state agency was not a state actor for purposes of plaintiffs' section 1983 claim. *See* 2007 WL 201163, at \*3. However, as plaintiffs here point out, that case, as well as the others cited by defendants, involve private entities and their employees who were accused of civil rights violations for reporting suspected child abuse to a state agency. *See* Defs.' Mem. of Law at 5-6, Dkt. No. 11. The court in *Mark Country* reached its conclusion after distinguishing *Kia v. McIntyre,* wherein the Court of Appeals for the Second Circuit held that "where a traditionally private entity is acting as 'reporting and enforcement machinery for [ ] a government agency charged with detection and prevention of child abuse and neglect,' such an entity is a state actor." *Mark Country,* 2007 WL 201163, at \*2, (*quoting Kia v. McIntyre,* 235 F.3d 749, 756-57 (2d Cir.2000) (*cert. denied, Kia P. ex rel. Mora P. v. New York City,* 534 U.S. 820, 122 S.Ct. 51 (2001)). The court in *Mark Country* noted that unlike the defendant hospital in *Kia,* the defendant teacher there merely reported the suspected abuse, and concluded that therefore, she was not a state actor.

    **\*9** Defendants accordingly argue, based on *Mark Country* and *Kia,* that they may not be deemed state actors simply because, as plaintiffs allege, they *reported* child abuse, not that they are part of the CPS enforcement mechanism. At oral argument, counsel for defendants clarified their argument to state that regardless of defendants' status as employees of a public school, mere reporting of child abuse does not rise to the level of state action.

    The court does not agree. It is clear from a reading of

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

*Kia* that the Second Circuit's decision was rendered after analysis of state action in the context of the private sector's role in the enforcement mechanism of CPS, a state agency. *See Kia,* 235 F.3d at 755-56. *Mark Country,* also dealing with a private entity, distinguished *Kia* on the basis of the reporter versus enforcer distinction, but did not hold, as defendants here argue, that mere reporting of child abuse does not render one a state actor regardless of the private or public status of their employer. *See* Defs.' Mem. of Law at 6, *citing Mark Country,* 2007 WL 201163, at *3 (pinpoint citation omitted by defendants).

Here, to be sure, there is no question that defendants' employer, the School District, is a municipal arm of the State of New York, and is therefore not a private, but a governmental entity. While it is true that "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law[,]" *Kern,* 93 F.3d at 43 (citing *Polk County v. Dodson,* 454 U.S. 312, 319-20, 102 S.Ct. 445, 450-51 (1981)), nonetheless, where a state employee "abuses the position given to him by the State," he is, in fact, a state actor, *see id .,* citing *West,* 487 U.S. at 49-50. Here, accepting plaintiffs' factual allegations in the amended complaint as true, the defendants, by filing the child abuse report at issue here, acted not out of a reasonable belief that child abuse occurred, but with retaliatory motive, utilizing information they learned through their employment with a municipal arm of the state. Accordingly, at this procedural stage of the litigation, the court cannot find that defendants are not state actors, and plaintiffs' section 1983 claims may not be dismissed for failure to state a claim on that basis.

*4. Right to Intimate Association*

Defendants next argue that Count I of plaintiffs' amended complaint, a section 1983 claim for violation of their right to intimate association, should be dismissed for failure to state a claim because plaintiffs fail to allege a loss of custody. Despite the fact that, as counsel for defendants noted at oral argument, allowing an intimate association claim to go forward on the facts of this case would be delving into "unchartered territory", defendants fail to meaningfully discuss the parameters of such a claim in their papers.[FN6] To be fair, plaintiffs' papers were similarly lacking in this regard. However, before

addressing defendants' argument as to plaintiffs' intimate association claim, a brief discussion of the legal landscape of such a claim is warranted.

   FN6. Notably, defendants' memorandum of law in support of their first motion to dismiss is ompletely devoid of the argument that one must allege a loss of custody in order to sustain a laim for violation of the right to intimate association, despite the fact that even plaintiffs' initial complaint included a claim for violation of the right to intimate association.

*10 At the outset, it should be made clear that the source of a right to intimate association in the U.S. Constitution is anything but obvious. As Judge Cardamone so aptly observed,

Although clearly recognized in a general way by the Supreme Court and in scholarly writings, all of [the] boundaries [of the constitutional right of intimate association] have not yet been fixed. We think it unnecessary for our purposes to attempt to fully remedy that lack. Like the wind that blows where it wills and can be heard, yet no one knows 'from where it cometh and whither it goeth' John 3:8, this constitutional right is real despite the lack of exact knowledge regarding its derivation and contours.

*Patel v. Searles,* 305 F.3d 130, 133 (2d Cir.2002). Nonetheless, due to the unique nature of the facts in support of the claim before this court, a brief discussion of the source of the right to intimate association is warranted here.

The right to intimate association "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state." *Sanitation and Recycling Industry, Inc. v. City of New York,* 107 F.3d 985, 996 (2d Cir.1997) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18, 104 S.Ct. 3244 (1984)). The Supreme Court has extended this right to relationships that "attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Id.* quoting *Roberts,* 468 U.S. at 619, 104 S.Ct. at 3250. The Court has stated that the right to intimate association

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

"receives protection as a fundamental element of personal liberty[,]" *Roberts,* 468 U.S. at 618, 104 S .Ct. at 3249, and is generally grounded in substantive due process under the Fourteenth Amendment, *see Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002) (*citing Roberts,* 468 U.S. at 618-19, 104 S.Ct. 3244)). Since *Roberts,* the Court has at times analyzed the right to intimate association as emanating from the First Amendment. *See Adler v. Pataki,* 185 F.3d 35, 42-43 (2d Cir.1999) (*citing City of Dallas v. Stanglin,* 490 U.S. 19, 23-24, 109 S.Ct. 1591 (1989)); *Lying v. International Union, UAW,* 485 U .S. 360, 364-66, 108 S.Ct. 1184 (1988). In those instances, however, the Court was not dealing with intimate familial relationships. The issue in *Stanglin* was whether an ordinance which restricted admission to certain dance halls to persons between the ages of fourteen and eighteen was in violation of the First Amendment's right to freedom of association. *See Stanglin,* 490 U.S. at 20-21, 109 S.Ct. 1591. In *Lying* the issue was whether a statute which precluded eligibility for food stamps where a member of the household was on strike violated the First Amendment associational and expressive rights of appellees. *See Lying,* 485 U.S. 360, at 364, 108 S.Ct. 1184. On the other hand, cases where matters of familial intimacy such as marrying and raising a family are at issue tend to be analyzed under the Due Process Clause of the Fourteenth Amendment. *See Adler,* 185 F.3d at 42 (*citing Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 639, 94 S.Ct. 791 (1974); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817 (1967); *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155 (1976); *Zablocki v. Redhail,* 434 U.S. 374, 383-85, 98 S.Ct. 673 (1978)). *See also Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1213 (1972). Cases in the Second Circuit which specifically deal with the right to intimate association vis-a-vis parent-child relationships, do so applying the principles of substantive due process. *See Anthony v.. City of New York,* No. 00-Civ.-4688, 2001 WL 741743, at *12 (S.D.N .Y. July 2, 2001) (*quoting Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999) ("Family members have, 'in general terms, a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state.' ")); *Wilkinson v. Russell,* 182 F.3d 89, 104 (2d Cir.1999). Therefore, while plaintiffs here ground their intimate association claim in the First and Fourteenth Amendments, *see* Am. Compl. ¶ 42, in accordance with

the aforementioned relevant caselaw, it should be analyzed under the legal framework of the substantive due process right found in the Fourteenth Amendment.

**\*11** Nonetheless, the standard to apply in order to determine whether the right to intimate association has been violated varies as much as the source of the right. In some cases, the Court has suggested that the right is not violated "unless the challenged action has the likely effect of ending the protected relationship." *Adler,* 185 F.3d at 43 (*citing, e.g., Lying,* 485 U.S. at 364-66, 108 S.Ct. 1184). In other cases, the right is not violated unless the challenged act was done with the intent of affecting the relationship, *see Adler,* 185 F.3d at 43 (*citing Califano v. Jobst,* 434 U.S. 47, 54, 98 S.Ct. 95 (1977)), or was arbitrary or "an 'undue intrusion' by the state into the [family] relationship[,]" *Adler,* 185 F.3d at 44 (*quoting Roberts,* 468 U.S. at 618, 104 S.Ct. 3244)).

Moreover, while "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State[,]" *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95 (1982), it is clear that a constitutionally protected liberty interest in family integrity is not absolute, but "is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Wilkinson,* 182 F.3d at 104 (*quoting Manzano v. South Dakota Dep't of Social Servs.,* 60 F.3d 505, 510 (8th Cir.1995) (internal quotation omitted)).

Here, defendants argue that plaintiffs' first claim for a violation of their right to intimate association must be dismissed because such a right does not include a right to be free from child abuse investigations, and because plaintiffs fail to allege a loss of custody. Plaintiffs counter that their complaint is legally sufficient in that it alleges a false complaint was made by defendants which was intended to devastate their family psychologically, and in fact succeeded in doing just that. Ostensibly, therefore, plaintiffs oppose defendants' argument that a loss of custody is required in order to succeed on their claim. The cases cited by defendants in support of their argument do

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

not stand for the proposition that a loss of custody is required, only that parental interest in the custody of their children is a fundamental, constitutionally protected liberty interest. See *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996); *Watterson v. Page,* 987 F.2d 1, 8 (1st Cir.1993). On the other hand, while many cases make clear that parents have a constitutionally protected liberty interest in the custody, care, education and management of their children, *see, e.g. Santosky,* 455 U.S. at 753, 102 S.Ct. 1388, implying that the liberty interest is not in custody alone, the court's research has not revealed a single case where relief was awarded for violation of the right of intimate association without a loss of custody, *c.f. Kia v. McIntyre,* 235 F.3d 749 (2d Cir.2000) (hospital withheld custody of newborn infant from mother after toxicology test revealed presence of methadone in infant's urine); *Wilkinson,* 182 F.3d at 94 (father was unable to see his son for over nine months, after being arrested and charged with sexually abusing him); *Gottlieb,* 84 F.3d at 515 (father removed from family home during the pendency of child abuse investigation); *Watterson,* 987 F.2d at 5 (children were removed from mother's home and placed in foster care pending child abuse investigation and prosecution).

**\*12** The Second Circuit has held that in order to prevail on a claim for violation of the substantive due process right of familial association, a plaintiff "must demonstrate that [the alleged offending act] was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Anthony v. City of New York,* 339 F.3d 129, 143 (2d Cir.2003) (quoting *Tenenbaum,* 193 F.3d at 600) (internal quotations omitted)). In both *Anthony* and *Tenenbaum,* the Second Circuit found that loss of custody for short periods of time does *not* rise to the level of egregiousness necessary for a substantive due process violation, where the purpose of the separation was to ensure the physical well-being of the detained individual, which is a legitimate governmental objective. *See Anthony,* 339 F.3d at 143; *Tenenbaum,* 193 F.3d at 600-601. Here, plaintiffs allege that the offending act was a malicious and false report of child abuse, which set in motion a series of events that wreaked psychological havoc on their family. Taking these facts, which were alleged in the amended complaint, as

true, it is possible that, "unchartered territory" or not, defendants' actions could be considered so shocking, arbitrary and egregious as to render them a violation of plaintiffs' substantive due process rights. Therefore, at this stage procedurally, the court is unable to grant defendants' motion to dismiss plaintiffs' first cause of action for failure to state a claim.

**5. Failure to Exhaust Administrative Remedies Under IDEA**

Finally, defendants argue that plaintiffs' second cause of action must be dismissed for failure to exhaust their administrative remedies pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1490 ("IDEA"). To be sure, such a motion is more properly brought as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). However the motion is styled, defendants' argument is flawed.

Plaintiffs' second cause of action is a section 1983 claim predicated on a claim for retaliation in violation of their First Amendment rights. In order to state a First Amendment retaliation claim, plaintiffs must allege that 1) they had an interest protected by the First Amendment, (2) the defendants' actions were motivated by or substantially caused by the plaintiffs' exercise of that right, and (3) the defendants' actions chilled the exercise of those rights. *See Gill v. Pidlypchak,* 389 F.3d 379, 382 (2d Cir.2004), *citing Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir.2001).

In support of their argument that this claim may not survive a motion to dismiss because plaintiffs have failed to exhaust their administrative remedies under the IDEA, defendants cite *Polera v. Board of Education of the Newburgh Enlarged City School District,* 288 F.3d 478 (2d Cir.2002). In *Polera,* a high school senior sued her school district for failure to provide her with a free appropriate public education under the Americans with Disabilities Act, the Rehabilitation Act, the United States and New York State Constitutions, and New York State common law. *See Polera,* 288 F .3d at 480. The Court of Appeals for the Second Circuit vacated the district court's order and remanded for dismissal for lack of subject matter jurisdiction because the plaintiff sought relief under the ADA and Rehabilitation Act that was available under the IDEA, and thus she was first required to exhaust

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))

administrative remedies under the IDEA before bringing suit. *See id. at 491.* In *Polera,* the court determined that the IDEA was intended to remedy precisely the wrongs complained of by the plaintiff. *See Polera,* 288 F.3d at 488. Here, plaintiffs seek remedies for defendants' maliciously filing a false report of child abuse against them in retaliation for their prior complaints against defendants regarding alleged failures to provide a safe environment for their daughter. In addition, plaintiffs allege defendants further retaliated against them for the filing of this lawsuit by creating various roadblocks preventing them from having their daughter classified as emotionally disturbed in order that she may receive special education services from the School District. To the extent that plaintiffs' daughter's rights to a free appropriate public education are implicated by defendants' alleged retaliatory actions against plaintiffs, the IDEA would be only peripherally involved. As such, exhaustion of remedies under the IDEA is in no way required in order for plaintiffs to bring a claim of First Amendment retaliation in this court. Accordingly, defendants' motion to dismiss plaintiffs' second cause of action is denied.

### 6. Claims Against the School District

*13 Although not addressed in their papers, defendants additionally seek dismissal of plaintiffs' section 1983 claims against the School District. It is true that as a municipal government body, a school district is considered a "person" within the meaning of section 1983. *See Back v. Hastings on Hudson Free Sch. Dist.,* 365 F.3d 107, 128 (2d Cir.2004) (*citing Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735-36, 109 S.Ct. 2702 (1989); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 689, 98 S.Ct. 2018 (1978)). However, like any municipality, a school district may not be held liable on a section 1983 claim under a theory of *respondeat superior,* and will only be liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *See id.* (*quoting Monell,* 436 U.S. at 694, 98 S.Ct.2018). Here, plaintiffs allege in their amended complaint that

> The [School] District[,] acting by and through each of the individually named Defendants[,] has over the years developed a policy and/or practice of retaliating against parents who express concerns to the [School] District

regarding incompetent and/or abusive staff members and conditions adversely affecting the health and safety of students including those with disabilities that have special educational needs. In that connection the retaliatory mechanism of choice of these individuals is the making of calculatedly false complaints of child abuse against the offending parents to the [CPS] Unit of the New York State Office of Children and Family Services.

Am. Compl. ¶ 11. Defendants argue that these statements alone are insufficient to state a claim under *Monell, supra,* because they lack enough facts to support a conclusion that the School District had a policy or custom that caused discrimination.

The pleading requirement for a section 1983 claim against a municipality will be met if a plaintiff alleges that " 'a formal policy which is officially endorsed by the municipality' caused the plaintiff's injuries." *Perez v. Westchester County Dep't of Corrs.,* No. 05-Civ.-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) (*quoting Moray v. City of Yonkers,* 924 F.Supp.8, 12 S.D.N.Y. (1996) (*citing Monell,* 436 U.S. at 690)). In *Perez,* the plaintiff was deemed to have met that standard where, on a series of section 1983 claims based upon the defendant corrections department's failure to offer Muslim inmates the same kosher meat provided to Jewish prisoners, plaintiff alleged that, among other things, "the gambits surrounding the denial of acceptable [h]alal food ... are tried, measured, and charted by [jail] administrators...." *Id.,* 2007 WL 1288579, at *5. Here, plaintiffs allege that the "retaliatory mechanism of choice" of the individual defendants is to file a false complaint of child abuse against CPS, in accordance with the School District's policy or practice of retaliation against parents like the plaintiffs, who address complaints against defendants. Because said allegation clearly meets the standard for pleading a claim under *Monell,* defendants' motion to dismiss the Amended Complaint as against the School District is denied.

### V. Conclusion

*14 For the aforementioned reasons, it is hereby ORDERED that defendants' first motion to dismiss, *see*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1879723 (N.D.N.Y.)

(Cite as: 2007 WL 1879723 (N.D.N.Y.))


Dkt. No. 11, and defendants' second motion to dismiss, *see*
Dkt. No. 21, collectively seeking dismissal of all pending
causes of action against them for failure to state claims
upon which relief may be granted pursuant to Fed.R.Civ.P.
12(b)(6) are DENIED.
    IT IS SO ORDERED.

N.D.N.Y.,2007.

Oglesby v. Eikszta
Not Reported in F.Supp.2d, 2007 WL 1879723
(N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



**C**

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mark JOHNSON, Sr., Plaintiff,

v.

Mr. WIGGER, et al., Defendants.

No. 9:07-CV-0024 (FJS/GHL).

Aug. 5, 2009.

Mark Johnson, Sr., Albany, NY, pro se.

Office of Robert P. Roche, Robert P. Roche, Esq., of Counsel, Albany, NY, for Defendants.

### *ORDER*

FREDERICK J. SCULLIN, JR., Senior District Judge.

**\*1** After carefully considering the entire file in this matter, including Magistrate Judge Lowe's July 10, 2009 Report-Recommendation to which the parties have not filed any objections; Defendants' motion for summary judgment and Plaintiff's claims against Defendants, the Court hereby

**ORDERS** that Magistrate Judge Lowe's July 10, 2009 Report-Recommendation is **ADOPTED IN ITS ENTIRETY** for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED;** and the Court further

**ORDERS** that Plaintiff's federal claims against Defendants are **DISMISSED SUA SPONTE** pursuant to 28 U.S.C. § 1915(e); and the Court further

**ORDERS** that Plaintiff's state-law claims against Defendants are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Mark Johnson, Sr., alleges that Defendants Mr. Wigger (the superintendent of the Albany County Correctional Facility), Albany County Sheriff James Campbell, the County of Albany, Sgt. Kramer, Lt. Edwards, and three John Does violated his constitutional rights by falsely

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

accusing him of sexually assaulting another inmate, subjecting him to excessive force, confining him to the Special Housing Unit ("SHU") for one day, and insulting him. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 24.) For the reasons that follow, I recommend that Defendants' motion be denied but that the Court *sua sponte* dismiss Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) (B).

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed his original complaint on January 8, 2007. (Dkt. No. 1.) Plaintiff alleged that he was accused of raping another inmate at the Albany County Correctional Facility and, as a result, placed in the Special Housing Unit ("SHU"). (Dkt. No. 1 at 4.) Plaintiff was released from the SHU the following day and told that the charges were unfounded. (Dkt. No. 1 at 6.) Plaintiff alleged that he filed a grievance regarding his treatment and suffered retaliation as a result. (Dkt. No. 1 at 6.)

Upon initial review, the Court dismissed the original complaint for three reasons. First, the Court found that Plaintiff had not sufficiently pleaded a due process cause of action based on his one-day SHU confinement because he had not alleged the existence of any atypical and significant hardships. (Dkt. No. 5 at 4.) Second, the Court found that Plaintiff had not stated a cause of action for retaliation because he had alleged only that correctional officers threatened and harassed him, which does not constitute adverse action. (Dkt. No. 5 at 5-6.) Third, the Court found that Plaintiff had not sufficiently alleged that Defendants Wiggins and Campbell were personally involved in any alleged constitutional violations. (Dkt. No. 5 at 6.) The Court granted Plaintiff leave to amend his complaint. (Dkt. No. 5 at 7.)

**\*2** Plaintiff filed the amended complaint on March 22, 2007. (Dkt. No. 6.) The amended complaint alleges

that on November 30, 2006, Plaintiff was falsely accused of sexually assaulting another inmate. Based on this accusation, Plaintiff was escorted to the SHU by an unnamed Correction Officer, two unnamed Sergeants, and Defendant Lt. Edwards. (Dkt. No. 6 at ¶ 13.) Upon arriving at the SHU, Plaintiff was pulled into the SHU by John Doe Correction Officers 1-3, who punched him several times and slammed him against the wall. The officers then ordered Plaintiff to strip, bend over, and spread his buttocks open. The officers placed Plaintiff in mechanical restraints and escorted him barefoot and naked to the SHU tier. When Plaintiff complained that the handcuffs were extremely tight, one Doe tightened the handcuffs and laughed at Plaintiff. (Dkt. No. 6 at ¶ 14.)

Plaintiff alleges that he was released from the SHU the next day. He filed a grievance regarding his treatment. (Dkt. No. 6 at ¶ 14.) On December 4, 2006, Defendant Sgt. Kramer confronted Plaintiff about the grievance, called him a "monkey" several times, and told Plaintiff that no officer would ever apologize to him for the way he was treated. Defendant Lt. Edwards then threw papers across his desk at Plaintiff and ordered him to sign off on the grievance. (Dkt. No. 6 at ¶ 15.)

On December 20, 2006, Plaintiff sent formal complaints to Defendants Wigger and Campbell. Wigger and Campbell did not respond. (Dkt. No. 6 at ¶ 16.)

On April 3, 2007, the Court issued an order directing service of the amended complaint. (Dkt. No. 8.) The Court cautioned Plaintiff that if he did not timely identify the Doe defendants, move for permission to amend the complaint to add them, and serve them with the complaint, "the Court will dismiss his claims against them." (Dkt. No. 8 at 2.) To date, Plaintiff has not identified or served the Does.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

## II. PROCEDURAL DEFICIENCIES

### A. Defendants' Failure to File a Rule 7.1(a)(3) Statement

Defendants move for summary judgment. As the moving parties, they bear the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Major League Baseball Properties, Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008). Only after they have met this burden is Plaintiff required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272-73 (2d Cir.2006). Federal Rule of Civil Procedure 56 and Local Rule 7 .1(a)(3) provide the procedural guidelines for meeting this initial burden.

Local Rule 7.1(a)(3) requires parties moving for summary judgment to file and serve a Statement of Material Facts. This statement "shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Facts that are not in the Statement of Material Facts need not be considered. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000). The rule thus puts the onus on the parties to marshal the evidence that supports the motion. *Id.* A district court has no duty to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *accord, Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-72 (N.D.N.Y.2003). "Our District's requirements are not empty formalities. Rules such as L.R. 7.1(a)(3) 'serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus

facilitating its judgment of the necessity for trial.' " *Jackson v. Broome County Correctional Facility,* 194 F.R.D. 436, 437 (N.D.N.Y.2000) (*citing Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995)). Local Rule 7.1(a)(3) clearly states that the *"[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion."* (Emphasis in original.)

**\*3** Here, Defendants did not file a Statement of Material Facts. As noted above, in the absence of a proper Statement of Material Facts, this Court has no duty to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002). I therefore decline to review the affidavits submitted by Defendants. I will instead treat their motion as an attack on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### B. Plaintiff's Failure to Respond to the Motion

Plaintiff did not timely oppose Defendants' motion. On February 6, 2009, I issued an order granting Plaintiff an additional 30 days to respond to the motion and cautioning him that if he did not do so "the Court will entertain Defendants' motion without benefit of Plaintiff's arguments. Plaintiff is not required to respond but if the Court determines that Defendants have met their burden to demonstrate entitlement to the relief requested, the Court may grant Defendants' motion, which ... **WILL RESULT IN DISMISSAL** of his action." (Dkt. No. 27) (Emphasis in original). To date, Plaintiff has not filed any opposition to Defendants' motion.

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants' motion to dismiss is properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause why his failure to oppose Defendants' motion should not be deemed as consent to the granting of the motion. Therefore, I must determine whether Defendants have met their burden to "demonstrate entitlement to dismissal" under Rule 12(b)(6).[FN1]

> FN1. *See also* Fed.R.Civ.P. 7(b)(1) (requiring motions to, *inter alia,* "state with particularity the grounds therefor").

An inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] is a more limited endeavor than a review of a contested motion to dismiss. Specifically, under such an analysis, the movant's burden has appropriately been characterized as "modest."[FN2] This is because, as a practical matter, the burden requires only that the movant present an argument that is "facially meritorious."[FN3]

> FN2. *See, e.g.,* Ciaprazi v. Goord, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord,* Saunders v. Ricks, 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), Smith v. Woods, 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting

Report-Recommendation of Lowe, M.J.); *see also* Race Safe Sys. v. Indy Racing League, 251 F.Supp.2d 1106, 1109-1110 (N.D.N.Y.2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], and recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N .D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), adopted by 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

> FN3. *See, e.g.,* Hernandez v. Nash, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b] [3], "the court must review the motion to determine whether it is *facially meritorious"* ) [emphasis added; citations omitted]; *accord,* Topliff v. Wal-Mart Stores East LP, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n. 43, 2007 WL 911891 (N.D.N.Y. March 22, 2007) (Lowe, M .J.); Hynes v. Kirkpatrick, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n. 2, 2007 WL 894375 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); Sledge v. Kooi, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n. 40, 2007 WL 951447 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); Kele v. Pelkey, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n. 2, 2006 WL 3940592 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

22, 2007) (Kahn, J.).

I find that Defendants have not met this modest burden. Defendants' memorandum of law is a scant three pages long. The first five paragraphs cite no law and discuss evidence submitted via affidavits. As discussed above, I decline to consider these affidavits in light of Defendants' failure to file a Rule 7.1(a)(3) Statement.

The sixth paragraph notes that motions to dismiss may be converted into motions for summary judgment. The seventh paragraph states:

**\*4** Plaintiff enunciates a cause of action in embarrassment, which is not known in the federal lexicon. While the required mechanical restraints (mandatory during transfer) may not have been comfortable, they are a nuisance that goes with the territory, known as jail. Here the movant has shown by affidavits and peripheral sources that the Plaintiff did not-in fact-suffer the loss or diminution of a federally guaranteed Constitutional right.

(Dkt. No. 24-4 at 2-3.)

The eighth paragraph of Defendants' memorandum of law consists entirely of a string cite of cases from the 1940s, with no explanation of how the eight cited cases apply to the case at hand. The relevance of the cited cases is far from clear. The first case, _Boro Hall Corp. v. General Motors Corp.,_ 124 F.2d 822 (2d Cir.1942), was an anti-trust action. The second case, _Gallways v._ _Caldwell,_ 120 F.2d 90 (3d Cir.1941), was a stockholder action alleging waste. The third case, _Central Mexico Light & Power v. Munch,_ 116 F.2d 85 (2d Cir.1940), was a suit by a corporation to enjoin actions on matured bonds.

The fourth case, _National Labor Relations Board v. Montgomery Ward & Co.,_ 144 F.2d 528 (D.C.Cir.1944), involved a request for annulment of an order of the National War Labor Board. The fifth case, _Urquhart v. American La Forance Fomite Corp.,_ 144 F.2d 542 (D.C.Cir.1944), was a patent action. The sixth case, _Samoro v. United States,_ 129 F.2d 594 (2d Cir.1942), was an action to recover taxes collected under the Agricultural Adjustment Act of 1933. The seventh case, _Cohen v. American Window Glass Company,_ 126 F.2d 111 (2d Cir.1942), was a shareholder action protesting a merger. The eighth case, _Sperry Products, Inc. v. Assoc. of American Railroads,_ 132 F.2d 408 (2d Cir.1942), was a patent action.

The ninth paragraph of Defendants' memorandum of law states that "[f]ederal courts have come to recognize that a jail can be a contentious place but not every touch or every sleight constitutes a tort or deprivation of a civil right that rises to the level of a federal lawsuit. Such is the stuff of embarrassing interludes and chagrin." (Dkt. No. 24-4 at 3.) Defendants conclude that "[f]or all these reasons, the Complaint should be dismissed." _Id._

Defendants have not directly addressed, with citations to applicable law, any of the issues raised by Plaintiff's complaint. Accordingly, I find that Defendants have not met their modest burden of demonstrating entitlement to the relief they request. Therefore, I recommend that the Court deny Defendants' motion for summary judgment/judgment on the pleadings.

Although I have recommended that the Court deny Defendants' motion for summary judgment/judgment on the pleadings, I have concluded that the complaint is subject to _sua sponte_ dismissal for two reasons. First, Plaintiff has failed to name and serve the Doe defendants. Second, the complaint fails to state a claim against any of the named defendants. I will discuss those findings and recommendations below.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

## III. FAILURE TO NAME AND SERVE DOE DEFENDANTS

**\*5** Regarding the Doe defendants, under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within *120 days* after the filing of the complaint. Fed.R.Civ.P. 4(m). This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be served with the summons and complaint within *sixty (60) days* of the filing of the complaint. N.D.N.Y. L.R. 4.1(b) [emphasis added]. Here, more than 120 days have elapsed since the filing of the complaint and Plaintiff has not named the Doe defendants or served them with the summons and complaint. Plaintiff was cautioned over two years ago that if he did not timely identify the Doe defendants, move for permission to amend the complaint to add them, and serve them with the complaint, "the Court will dismiss his claims against them." (Dkt. No. 8 at 2.) As a result, Plaintiff is in violation of both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court. I therefore recommend that all claims against John Does 1-3 be dismissed.

## IV. FAILURE TO STATE A CLAIM AGAINST NAMED DEFENDANTS

As noted above, although I have recommended that the Court deny Defendants' motion for summary judgment/judgment on the pleadings, I have concluded that the complaint is subject to *sua sponte* dismissal under 28 U.S.C. section 1915(e)(2)(B) for failure to state a claim on which relief may be granted against the named defendants.

### A. Legal Standard for Dismissal For Failure to State a Claim

Plaintiff is proceeding *in forma pauperis.* (Dkt. No.

5.) 28 U.S.C. section 1915(e) directs that, when a plaintiff proceeds *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that-... (B) the action ... (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

A complaint fails to state a claim on which relief may be granted if it is insufficient under Federal Rule of Civil Procedure 8(a) (2); [FN4] or if it is not legally cognizable. [FN5] Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN6] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN7] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN8]

FN4. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

FN5. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

FN6. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN7. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN8. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir.1996] ).

"[A] complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

**\*6** It should also be emphasized that, "[i]n reviewing a complaint for dismissal ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN9] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [FN10] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality. "[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN11] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN12] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint. [FN13] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it." [FN8]

FN9. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

FN10. *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

FN11. *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN12. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN13. *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

FN14. *Cuoco, 222 F.3d at 112* (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991)* ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007)* (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008)* (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co., 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005)* (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba, 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001)* (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN15] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN16] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN17] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[FN18]

FN15. *Sealed Plaintiff v. Sealed Defendant # 1, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008)* ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir.1983)* ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN16. *See Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir.1972)* (extra liberal pleading standard set forth in *Haines v. Kerner, 404 U.S. 519 [1972]*, did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal., 101 F.3d 108 (2d Cir.1996)* (citing *Prezzi v. Schelter, 469 F.2d 691*) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter, 469 F.2d 691*, within the Second Circuit]; *accord, Praseuth v. Werbe, 99 F.3d 402 (2d Cir.1995)*.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

FN17. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law" [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN18. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

**B. Claims Against the County of Albany**

Plaintiff alleges that the County of Albany "permitted and tolerated a pattern and practice of unreasonable use of force by Correction Officers or Sheriff Deputies of the County of Albany [and has] maintained a system of review of Correction Officers' or Sheriff Deputies' conduct which is so untimely and cursory as to be ineffective and which permits and tolerates the unreasonable and excessive use of force by Correction Officers of the County of Albany." (Dkt. No. 6 at ¶¶ 24-25.)

It is well established that "[a] municipality may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.* "FN19 "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy." FN20 "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." FN21

FN19. *Powell v. Bucci,* 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior.* ").

FN20. *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690-691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

FN21. *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. County of Tompkins,* 90-CV-0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. County of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

**\*7** With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." FN22

FN22. *Dorsett-Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. County of Saratoga,* 358 F.Supp.2d 115, 133-134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order

of second and third ways, and citing five more Supreme Court cases).

"The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A complaint that includes only such conclusory allegations is subject to dismissal under Rule 12(b)(6). *Economic Opportunity Comm'n of Nassau County v. County of Nassau, Inc.,* 47 F.Supp.2d 353, 370-71 (E.D.N.Y.1999). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker ." *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Here, other than alleging the single incident in which Plaintiff was beaten by correction officers, the complaint does not contain any facts plausibly suggesting that the County of Albany has a custom or practice of permitting and tolerating the use of excessive force by correction officers. Therefore, I recommend that the Court dismiss the claim against the County of Albany *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) with leave to amend.

**C. Claims Against Defendants Wigger and Campbell**

Plaintiff alleges that he sent formal complaints to Defendants Wigger and Campbell regarding the excessive force incident, the threats he received from officers, and the false accusation against him. (Dkt. No. 6 at ¶ 16.) Defendants Wigger and Campbell "never responded." *Id.*

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN23] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN24] If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN25] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN26] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN27]

FN23. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

FN24. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN25. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d

Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN26. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN27. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs).

*8 A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327,344-45 (S.D.N.Y.2000). *See also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Therefore, I recommend that the Court dismiss Plaintiff's claims against Defendants Wigger and Campbell *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

**D. Claims Against Defendant Kramer**

Plaintiff alleges that Defendant Kramer called him a "monkey" and would not apologize. (Dkt. No. 6 at ¶ 15.) "42 U.S.C. § 1983 does not provide a remedy for every common law tort and a suit based on that statute cannot be sustained merely on the basis of verbal abuse." *Williams v. Pecchio,* 543 F.Supp. 878, 879 (W.D.N.Y.1982). "It is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional violations." *Alnutt v. Cleary,* 913 F.Supp.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

160, 165 (W.D.N.Y.1996) (punctuation omitted). Therefore, I recommend that the Court dismiss Plaintiff's claims against Defendant Kramer *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) (B).

**E. Claims Against Defendant Edwards**

Plaintiff claims that Defendant Edwards escorted him to the SHU when he was falsely accused of sexually assaulting another inmate. (Dkt. No. 6 at ¶¶ 13.) Plaintiff served one day in the SHU. (Dkt. No. 6 at ¶ 14.) I have construed this as a claim that Defendant Edwards violated Plaintiff's procedural due process rights.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). The issue, then, is whether Plaintiff's one-day confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

**\*9** In the Second Circuit, determining whether a disciplinary confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer,* 364 F.3d at 64. Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions [FN28]." *Palmer,* 364 F.3d at 65. Allegations of severe conditions are particularly important for stating a cause of action in cases involving SHU confinements of 30 days or less. *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Arce v. Walker,* 139 F.3d 329 (2d Cir.1998).

FN28. "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

Here, Plaintiff has not described the conditions he experienced in the SHU, must less alleged the existence of conditions more severe than normal SHU conditions. Plaintiff might argue that his allegations regarding the use of excessive force by the officers escorting him to the SHU tier suffice. However, allegations of excessive force used *en route* to the SHU do not constitute severe SHU conditions, but rather are evaluated separately as Eighth Amendment claims against the individual officers. *See Rodriguez v. McGinnis,* 1 F.Supp.2d 244 (S.D.N.Y.1998). Here, as discussed above, Plaintiff's claims against the correction officers who allegedly beat him should be dismissed for failure to identify and serve them. Therefore, I recommend that the Court dismiss Plaintiff's claim against Defendant Edwards *sua sponte* pursuant to 28 U.S.C. § 1915(e).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

(Cite as: 2009 WL 2424186 (N.D.N.Y.))

**F. State Court Claims**

Plaintiff alleges that Defendants defamed and slandered him by falsely accusing him of sexually assaulting another inmate. He claims that Defendants' actions violated New York state law. (Dkt. No. 6 at ¶¶ 1, 2, 5, 13.) In light of my recommendation that the Court dismiss Plaintiff's federal claims, I recommend that the Court decline to exercise pendent jurisdiction over Plaintiff's state law claims.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 24) be *DENIED;* and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.

Johnson v. Wigger

Slip Copy, 2009 WL 2424186 (N.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2009 WL 5219018 (E.D.N.Y.)

(Cite as: 2009 WL 5219018 (E.D.N.Y.))

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

E.D. New York.
Caesar GONZALEZ, Plaintiff,
v.
April LUFKIN, a/k/a Lopez, County of Nassau, Nassau County Department of Social Services, Defendants.
No. 08-CV-1134 (JS)(ARL).

Dec. 28, 2009.
Caesar Gonzalez, Austell, GA, pro se.

April Lufkin, South Hempstead, NY, pro se.

Lorna B. Goodman, Esq., Office of the Nassau County Attorney, Mineola, NY, for Defendants Nassau County.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge.
**\*1** Plaintiff, Caesar Gonzalez ("Plaintiff"), commenced this 42 U.S.C. § 1983 action on March 19, 2008 against April Lufkin a/k/a Lopez ("Lopez"), the State of New York, Nassau County, and Nassau County Department of Social Services ("Defendants") alleging, *inter alia,* conspiracy, interference with his parental rights, infliction of emotional distress, and defamation. On March 31, 2009, this Court dismissed Plaintiff's claims against the State of New York with prejudice and dismissed Plaintiff's remaining claims with leave to file an Amended Complaint. Pending before the Court is Defendant Nassau County's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

*BACKGROUND*

The following facts are set forth in the Amended Complaint.

Plaintiff has two adult children with Defendant Lopez. According to Plaintiff, the Nassau County Department of Social Services, in conjunction with Defendant Lopez, prevented Plaintiff from interacting with his children. Lopez allegedly "defeated, impaired, impeded, or prejudiced the rights or remedies of Plaintiff by alienating him from ... [his] children". (Am.Comp.¶ 8.) In April of 1992, a court order granted Plaintiff joint custody and visitation rights. (*Id.* ¶ 9.) However, in March of 1993, Lopez informed Plaintiff that she had been advised by Social Services and the Nassau County Family Court to prohibit the children from visiting with Plaintiff. (*Id.* ¶ 11.) Plaintiff maintains that he repeatedly attempted to contact his children and was finally successful in reaching them via e-mail seven years later. Lopez allegedly discovered that Plaintiff had contacted the children, and again informed Plaintiff that she had court orders barring Plaintiff from contacting the children. In January of 2008, Plaintiff discovered that, contrary to Lopez's representations, there were no court orders prohibiting Plaintiff from contacting his children.

Plaintiff maintains that the Nassau County Department of Social Services ("DSS") facilitated Plaintiff's alienation from his children. Plaintiff states that DSS made no efforts to contact Plaintiff regarding the health and welfare of his children and failed to inquire as to whether Plaintiff had visited his children. Numerous complaints were allegedly filed with DSS regarding Lopez's alleged neglect of Plaintiff's children; however, DSS purportedly failed to inform Plaintiff of the reports and complaints. Furthermore, Plaintiff contends that DSS wrongfully continued to bill Plaintiff for child support after Plaintiff was no longer able to see his children.

*DISCUSSION*

I. *Standard on Motion to Dismiss*
    In deciding motions to dismiss brought under Fed.R.Civ.P. 12(b)(6), the Court applies a "plausibility standard," which is guided by "[t]wo working principles," *Ashcroft v. Iqbal,* --- U .S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Harris v.. Mills,* 572 F.3d 66, 72 (2d

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2009 WL 5219018 (E.D.N.Y.)

(Cite as: 2009 WL 5219018 (E.D.N.Y.))

Cir.2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (quoting *Ashcroft* ). Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss, and determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*2 In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998.) Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-153 (2d Cir.2002). "Of course, it may also consider matter of which judicial notice may be taken under Fed.R.Evid. 201 ." *Kramer v. Time Warner, Inc.,* 837 F.2d 767,773 (2d Cir.1991).

A district court, in applying this standard, must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. Nat'l.,* 191 F.3d 198, 202 (2d Cir.1999); *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989). Furthermore, "the need to draw all inferences in the plaintiff's favor has heightened application when the plaintiff is proceeding *pro se."* *McInerney v. Rensselaer Polytechnic Inst.,* 505 F.3d 135, 138 (2d Cir.2007) (citing *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007)).

II. *Plaintiff's Amended Complaint Fails to State a Section 1983 Cause of Action*

A. *Claims Against the Department of Social Services*

At the outset, the Court notes that the Nassau County Department of Social Services is a subdivision of the municipality and does not have any separate legal existence or the capacity to be sued. "[M]unicipal departments like the Department of Social Services are not amenable to suit, ... and no claims lie directly against the Department." *Hoisington v. County of Sullivan,* 55 F.Supp.2d 212, 214 (S.D.N.Y.1999) (internal citations omitted). Plaintiff's claims are more appropriately brought against the Defendant County of Nassau. According, Plaintiff's claims against the Nassau County Department of Social Services are DISMISSED with prejudice.

B. *Section 1983 Claims Against Defendant County of Nassau*

Nassau County argues that Plaintiff fails to state a claim under Section 1983. The Court agrees. To state a claim under Section 1983, "a plaintiff must allege that: (1) the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. New York,* 985 F.2d 94, 98 (2d Cir.1993) (overruled on other grounds). For a § 1983 conspiracy claim, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999).

*3 The Court finds that Plaintiff has failed to state a Section 1983 claim against Nassau County. It is true that "the interest of a parent in the custody of his or her children [is] 'a fundamental, constitutionally protected liberty interest.' " *Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir.2000) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). However, here, Plaintiff has failed to show that Nassau County abridged Plaintiff's due process rights. The crux of Plaintiff's Complaint is that Defendant Lopez falsely told Plaintiff that there were court orders prohibiting Plaintiff's contact with his children. Plaintiff admits that he later learned that there were, in fact, no such court orders. Thus, taking Plaintiff's claims as true, there are absolutely no allegations indicating that Nassau County unlawfully interfered with Plaintiff's ability to visit with and care for his children. In fact, Plaintiff has not alleged any unconstitutional actions by Nassau County; rather, Plaintiff's entire Amended Complaint is premised on Defendant Lopez's allegedly

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 5219018 (E.D.N.Y.)

(Cite as: 2009 WL 5219018 (E.D.N.Y.))

deceitful conduct. Plaintiff's Amended Complaint is also devoid of any facts indicating that Nassau County acted in concert with Defendant Lopez to deprive Plaintiff of his constitutional rights.

Nor has Plaintiff shown that Nassau County denied Plaintiff equal protection of the laws. "The Fourteenth Amendment guarantee of equal protection is 'a right to be free from invidious discrimination in statutory classifications and other governmental activity.' " *Bernheim v. Litt,* 79 F.3d 318, 323 (2d Cir.1996) (quoting *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). The right to equal protection "is violated when the state distinguishes between individuals based on unreasonable, arbitrary, or capricious differences that are irrelevant to a legitimate government objective." *Id.* (internal quotations and citations omitted). Although Plaintiff alleges that Nassau County "engaged in selective enforcement of the law and court rulings," Am. Comp. ¶ 3, the Court finds that Plaintiff's allegations are conclusory. Plaintiff has not alleged any facts indicating that Plaintiff was treated differently from others.

The Court additionally finds that Plaintiff's claims regarding Nassau County's knowledge of the children's allegedly improper and abusive upbringing are conclusory. To the extent that Plaintiff claims that DSS failed to investigate reports and complaints regarding Lopez's conduct, "[i]t is well established that an allegation of mere negligence is generally insufficient to sustain a § 1983 claim." *Camacho v. City of N.Y. Office of Child Support,* No. 05-CV-2002, 2006 U.S. Dist. LEXIS 65626, at *4 (S.D.N .Y. Sept. 14, 2006). Rather, Plaintiff must show that members of DSS acted with " 'deliberate indifference' "-i.e., that the actor had actual knowledge of impending harm which he consciously refused to prevent." *Hoisington v. County of Sullivan,* 55 F.Supp.2d 212, 216 (S.D.N.Y.1999). Plaintiff's conclusory and vague allegations simply do not make such a showing.

**\*4** Because Plaintiff has failed to allege that Nassau County unconstitutionally interfered with Plaintiff's custody of his children, the Court dismisses Plaintiff's Section 1983 claims against this Defendant. *See Daniels v. Murphy,* No. 06-CV-5841, 2007 U.S. Dist. LEXIS 47838, at *15 (E.D.N.Y. July 2, 2007) (dismissing

plaintiff's Section 1983 claims because the "complaint fail[ed] to allege that the [Child Protective Services] defendants interrupted plaintiff's parental custody, and thereby implicated plaintiff's due process rights.").

C. *Claims Against Defendant Lopez*

The Court *sua sponte* dismisses Plaintiff's claims against Lopez. To state a Section 1983 claim against a private actor, such as Lopez, Plaintiff must show that the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). Mere conclusory allegations that a private entity acted in concert with a state actor do not suffice to state a cause of action on a Section 1983 claim against a private entity. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). Here, Plaintiff's Amended Complaint fails to show that Lopez acted in concert with state officials to deprive Plaintiff of his constitutional rights.

Because the Court has dismissed Plaintiff's Section 1983 claims, there are no federal causes of action remaining. The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims and thus dismisses these claims without prejudice. *See Karmel v. Liz Claiborne, Inc.,* No. 99-CV-3608, 2002 U.S. Dist. LEXIS 12842, at *10-11 (S.D.N.Y. July 12, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

*CONCLUSION*

For the reasons stated herein, Nassau County's motion to dismiss is GRANTED. The Court dismisses Plaintiff's federal causes of action with prejudice for failure to state a claim, and dismisses Plaintiff's state law claims without prejudice. The Clerk of the Court is directed to mark this matter closed.

SO ORDERED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 5219018 (E.D.N.Y.)

(Cite as: 2009 WL 5219018 (E.D.N.Y.))

E.D.N.Y.,2009.

Gonzalez v. Lufkin
Not Reported in F.Supp.2d, 2009 WL 5219018
(E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.